**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| PAULITA CORONADO, *Individually and* | § | |
| *on Behalf of All Others Similarly Situated*, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-13-2179 |
| | § | |
| D N.W. HOUSTON, INC., *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

I.      **Background**

      Paulita Coronado, the plaintiff, was a dancer at the Gold Cup, an adult entertainment club

in Houston.  Coronado sued Gold Cup and its owners and managers, Ali and Hassan Davari, under

the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201–219.  (Docket Entry No. 1).  The complaint

alleged that the defendants misclassified Coronado and other dancers as independent contractors

exempt from the FLSA rather than as employees covered by the FLSA's protections.  The complaint

alleged that the defendants failed to compensate the dancers for the hours they worked.  The

complaint sought collective-action certification of the following class:

> [C]urrent and former exotic entertainers who worked at Gold Cup at
> any time during the three years before this Complaint was filed up to
> the present.

The parties agreed to conditional certification and issuance of notice as to the FLSA

misclassification and underpayment claims.  (Docket Entry No. 27).

      Gold Cup has moved for leave to file state-law counterclaims for breach of contract,

promissory estoppel, unjust enrichment, money had and received, and declaratory relief.  (Docket

Entry No. 14).  The basis of these claims is that Coronado (and other dancers who are members of the proposed collective action) signed a document entitled an "Independent Contractor Agreement" when they began working at Gold Cup.  (Docket Entry No. 15, Ex. A at 2).  In the Agreement, Coronado stated that she was an independent contractor, not an employee.  The  Agreement stated:

> It is the express intention of the parties that the contractor is, and shall remain during the term of this agreement, an independent contractor and not be deemed an . . . employee of Gold Cup for any purpose. Nothing in this agreement shall be interpreted . . . as creating or establishing the relationship of employer or employee between the contractor and Gold Cup.  The parties acknowledge that the contractor is not an agent, servant, or employee for . . . Federal law (including but not limited to the Fair Labor Standards Act) or any other purpose.

(Docket Entry No. 15, Ex. A at 4).

In the proposed counterclaims, Gold Cup alleges that if Coronado is classified as an employee under the FLSA, "she must return the proceeds she earned for her dances to Gold Cup," less the wages she would have been entitled to under the FLSA.  (Docket Entry No. 15 at ¶ 8; Docket Entry No. 21 at 13).  Gold Cup alleges that "[b]y bringing this lawsuit and alleging that Defendants misclassified her as an independent contractor rather than an 'employee,' Ms. Coronado repudiated the parties' agreement."  (Docket Entry No. 15 at ¶ 8).  Gold Cup seeks the costs of having to defend this lawsuit, which it contends would not have been necessary had Coronado complied with the Independent Contractor Agreement.  Gold Cup also seeks to include in the proposed collective-action notice language warning other dancers that if they opt in, they may face liability for breaching the Independent Contractor Agreements they signed, and if they prevail on their FLSA claims, they may have to repay the money they earned as dancers.  Coronado opposed

Gold Cup's motion for leave to file the counterclaims, arguing that leave to file should be denied on the basis that the claims are legally insufficient and futile.  (Docket Entry No. 20).

After reviewing the pleadings; the motion, response, reply, and related submissions; and the applicable law, the court denies Gold Cup's motion for leave to file the counterclaims.  The reasons are explained below.

## II.     Analysis

### A.     Whether the Counterclaims are Compulsory or Permissive

Under Rule 13(a)(1), a compulsory counterclaim is one that "(A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction."  FED. R. CIV. P. 13(a)(1). Counterclaims that are not compulsory are permissive.  FED. R. CIV. P. 13(b).

A counterclaim arises out of the same transaction and occurrence as the original claim if: (1) both largely raise the same issues of fact or law; (2) claim preclusion would bar a subsequent suit on the counterclaim apart from the compulsory counterclaim rule; (3) the same evidence will support or refute the respective claims; or (4) there is a logical relation between the original claim and the counterclaim.  *Tank Insulation Int'l, Inc. v. Insultherm, Inc.*, 104 F.3d 83, 85–86 (5th Cir. 1997). The general rule in this circuit is that the claim is compulsory if one of these four tests is met.  *Id.* at 86.  In other circuits, the courts appear to view the four elements as factors to be considered in the overall analysis.  *See e.g.*, *Q Int'l Courier Inc. v. Smoak*, 441 F.3d 214, 219 (4th Cir. 2006) (stating that the four factors "work less [like] a litmus" test and "more [like] a guideline" (internal quotations omitted; brackets in the original)).

3

Gold Cup's counterclaims are not compulsory because their resolution will require a different legal and factual analysis than the FLSA claims.  The FLSA claims turn on whether Coronado and other putative class members should be classified as employees for purposes of the FLSA and whether they were paid the minimum hourly wages and the overtime wages the FLSA requires.  To determine a worker's status, the focus is on the economic realities of the relationship. *See Gray v. Powers*, 673 F.3d 352, 354 (5th Cir. 2012) ("The Fifth Circuit uses the 'economic reality' test to evaluate whether there is an employer/employee relationship.").  A court considers "whether the putative employer: (1) possessed the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Williams v. Henagan*, 595 F.3d 610, 620 (5th Cir. 2010).

The intent of the worker and the employer, and the label they use to describe their working relationship, does not control whether the worker is an employee or an independent contractor.  *See Watson v. Graves*, 909 F.2d 1549,1554 (5th Cir. 1990) ("We must . . . look to the substantive realities of the relationship, not to mere forms or labels ascribed to the laborer by those who would avoid coverage."); *Real v. Driscoll Strawberry Assocs., Inc.*, 603 F.2d 748, 755 (9th Cir. 1979) ("[T]he subjective intent of the parties to a labor contract cannot override the economic realities reflected in the factors described above." (citing *Usery v. Pilgrim Equip. Co.*, 527 F.2d 1308, 1315 (5th Cir. 1976); *Brennan v. Partida*, 492 F.2d 707, 709 (5th Cir. 1974)); *Montoya v. S.C.C.P. Painting Contractors, Inc.*, 589 F. Supp. 2d 569, 577 (D. Md. 2008) ("[N]either the subjective intent of the worker in forming the employment relationship nor the label affixed by the putative employer controls the question whether a worker is an employee under the FLSA."); *Mathis v. Hous. Auth.*

4

*of Umatilla Cnty.*, 242 F. Supp. 2d 777, 785 (D. Or. 2002) (recognizing that "it is 'well-settled that subjective intent cannot override the economic realities'") (quoting *Real*, 603 F.2d at 755).  The fact that a worker and her employer use the "independent contractor" label does not determine the outcome of the economic realities test or the application of the FLSA.  *See Rutherford Food Corp. v. McComb*, 331 U.S. 722, 729 (1947) ("[P]utting on an 'independent contractor' label does not take the worker from the protection of the [FLSA].").[1]

The language in the "Independent Contractor Agreement" stating that "[i]t is the express intention of the parties that the [dancer] is . . . an independent contractor and not . . . an . . . employee of Gold Cup for any purpose," (Docket Entry No. 15, Ex. A at 4), is simply a label and at most represents the parties' subjective intent.  *See Watson*, 909 F.2d at 1554; *Montoya*, 589 F. Supp. 2d at 577.  The Agreement is not probative of the economic realities of Coronado's or the other dancers' employment relationship with Gold Cup.

The facts relevant to determining FLSA liability are different from those relevant to resolving the counterclaims. The FLSA issue turns on the economic realities test.  The counterclaim issues turn on construing the contract language and determining its scope and enforceability.  *See Hose v. Henry Indus., Inc.*, No. 13-cv-2490, 2014 WL 1356039, at *2 (D. Kan. Apr. 7, 2014) (concluding that a counterclaim alleging breach of a contract "designating [the plaintiff] as an

---

[1]  Consistent with this rule, the Supreme Court concluded in *Tony and Susan Alamo Foundation v. Secretary of Labor*, 471 U.S. 290 (1985), that although certain workers considered themselves to be volunteers, as opposed to employees, such views were not dispositive, because "[t]he test of employment under the [FLSA] is one of 'economic reality.'" *Id.* at 301.  The Court explained that "the purposes of the [FLSA] require that it be applied even to those who would decline its protections . . . [otherwise] employers might be able to use superior bargaining power to coerce employees. . . to waive their protections under the Act." *Id.* at 302.

independent contractor rather than an employee, and further providing for indemnification for any litigation involving his employment status" was not compulsory).

Gold Cup's proposed contingent counterclaims alleging that if Coronado prevails on her FLSA claim, Gold Cup is entitled to a setoff in the amount she earned dancing, are also not compulsory because they have not yet matured.  The proposed counterclaims are contingent because they will not mature unless and until Coronado and others have prevailed and recovered damages on the FLSA claims.  Under Rule 13(e), a counterclaim that does not mature at the time of the initial pleading need not be asserted, "even if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim" because "the after-acquired claim is not considered a compulsory counterclaim under Rule 13(a) and a failure to interpose it will not bar its assertion in a later suit." 6 CHARLES A. WRIGHT, ARTHUR R. MILLER, MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE § 1428 at 246 (3d ed. 2010); *see also Am. Home Assur. Co. v. Pope*, 487 F.3d 590, 604 (8th Cir. 2007); *Stone v. Dep't of Aviation*, 453 F.3d 1271, 1276 (10th Cir. 2006); *Kuschner v. Nationwide Credit, Inc.,* 256 F.R.D. 684 (E.D. Cal. 2009).

Gold Cup's counterclaims do not arise out of the same transaction and occurrence as the FLSA claims.  The counterclaims are permissive.

**B.      Whether there is Supplemental Jurisdiction over the Permissive Counterclaims**

Because the counterclaims are permissive, there must be an independent jurisdictional basis for this court to exercise subject-matter jurisdiction over them.  There is no original jurisdiction over the state-law counterclaims because they are between nondiverse parties and raise no federal question.  The plaintiff, defendant Gold Cup, and the individual defendants are all citizens of Texas. *See* 28 U.S.C. § 1332.

6

For the court to exercise supplemental jurisdiction over the proposed counterclaims, they must be "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a). Courts have held that under § 1367, even though permissive counterclaims do not arise out of the same transaction and occurrence, they may still form part of the same Article III case or controversy. *Global NAPs, Inc. v. Verizon New England Inc.*, 603 F.3d 71, 87 (1st Cir. 2010) (holding that "§ 1367 supersedes case law on supplemental jurisdiction that had distinguished between compulsory and permissive counterclaims"); *Jones v. Ford Motor Credit*, 358 F.3d 205, 212–13 (2d Cir. 2004) (finding that court could exercise supplemental jurisdiction over permissive counterclaim that satisfied § 1367(a)); *Channell v. Citicorp Nat'l Servs., Inc.*, 89 F.3d 379, 385 (7th Cir. 1996) (finding that court could exercise supplemental jurisdiction over permissive counterclaim because it satisfied § 1367(a)); *NatureSweet, LTD. v. Mastronardi Produce, LTD.*, No. 12-cv-1424, 2013 WL 460068, at *4 n.4 (N.D. Tex. Feb. 6, 2013) (discussing the difference between the "old understanding of counterclaims" requiring an independent jurisdictional grant and the court of appeals' decisions finding that it is no longer the case).

The proposed counterclaims do not form part of the same Article III case or controversy as the FLSA claims, because the legal and factual issues arising from the "Independent Contractor Agreement" are not sufficiently related to the FLSA claims.  As noted above, Gold Cup's proposed counterclaims require a different legal and factual analysis than the FLSA claims.  The FLSA claims turn on whether, under the economic realities of the dancers' relationship with Gold Cup, they are employees, not how they were labeled in the Independent Contractor Agreement.  By contrast, the proposed counterclaims turn on the contract language and issues of consideration, conscionability,

and defendant's damages, including attorney fees.

Even if there was supplemental jurisdiction over the counterclaims, this court would decline to exercise it.  Section 1367(c) states that "district courts may decline to exercise supplemental jurisdiction" when "there are other compelling reasons for declining jurisdiction."  28 U.S.C. § 1367(c)(4).  In FLSA cases, the Fifth Circuit has "been hesitant to permit an employer to file counterclaims . . . for money the employer claims the employee owes it, or for damages the employee's tortious conduct allegedly caused."  *Martin v. PepsiAmericas, Inc.*, 628 F.3d 738, 740 (5th Cir. 2010).  The Fifth Circuit cited *Donovan v. Pointon*, 717 F.2d 1320, 1323 (10th Cir. 1983), which explained that the FLSA is intended to enforce a "public right" and permitting employers to "try [their] private claims, real or imagined, against [their] employees would delay claims and even subvert the whole process."  The general rule prohibiting an employer from counterclaiming against employees asserting FLSA claims is well illustrated in *Gagnon v. United Technisource, Inc.*, 607 F.3d 1036 (5th Cir. 2010).  In *Gagnon*, the district court refused to address contract and fraud counterclaims employers brought against an FLSA plaintiff.  *Id.* at 1040.  The employers appealed, arguing that the district court erred by not addressing the proposed counterclaims.  The Fifth Circuit affirmed.  The appellate court stated that although the employers' claims were meritless, "our precedent suggests that such claims should not be addressed in a[n] FLSA action."  *Id.* at 1042 (citing *Brennan v. Heard*, 491 F.2d 1, 4 (5th Cir. 1974), *rev'd on other grounds*, *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 (1988) (noting that the only function of the federal judiciary under the FLSA "is to assure to the employees of a covered company a minimum level of wages" and holding that "[a]rguments and disputations over claims against those wages are foreign to the genesis, history, interpretation, and philosophy of the [FLSA]")).  The Fifth Circuit and other courts

8

have identified compelling reasons for district courts to decline to exercise supplemental jurisdiction over employers' proposed permissive counterclaims against FLSA plaintiffs. For those reasons, this court would decline to exercise supplemental jurisdiction over the proposed counterclaims.

## III.  Conclusion

Gold Cup's motion for leave to file counterclaims, (Docket Entry No. 14), is denied. A status conference is scheduled for **June 26, 2014, at 11:00 a.m.** in Courtroom 11-B, for the parties to discuss the disputes over the proposed notice and consent form.

SIGNED on June 19, 2014, at Houston, Texas.

Lee H. Rosenthal
United States District Judge