IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PAULITA CORONADO, JURATE KOPECKY, AND ENID LOPEZ, *Individually and on Behalf of All Others Similarly Situated*, | § § § § § | |
| Plaintiffs, | § § | |
| VS. | § § | CIVIL ACTION NO. H-13-2179 |
| D N.W. HOUSTON, INC., *et al.*, | § § § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

**I.   Background**

Paulita Coronado, the lead plaintiff in this Fair Labor Standards Act (FLSA) suit, was a dancer at the Gold Cup and Cover Girls Clubs, two adult entertainment clubs in Houston. Coronado filed two suits against the clubs and their owners and managers, Ali and Hassan Davari, under 29 U.S.C. §§ 201–219. The two cases were consolidated. (Docket Entry Nos. 1, 24, 31). Coronado alleged that the defendants misclassified her and other dancers as independent contractors rather than as employees and failed to pay what the FLSA requires for the hours worked. Coronado sought certification of a class of "current and former exotic entertainers who worked at [the Gold Cup and Cover Girls Clubs] at any time during the three years before [the complaints were] filed up to the present." (Docket Entry No. 1 at 11); *see also* (Docket Entry No. 1, Case No. 4:13-cv-2174).

On July 30, 2014, the court granted conditional certification and issued an order granting notice to potential class members. (Docket Entry No. 70). The order gave the class members "60 days from the initial date of the mailing or email delivery of the Approved Notice of Rights and Consent Form to file their Notice of Consent opting into this lawsuit as plaintiffs." (*Id.* at 2, ¶ 4).

The deadline fell on October 10, 2014. (Docket Entry Nos. 108 at 2; 117 at 5). Roughly 95 dancers opted into the lawsuit before October 10, 2014 by filing notices of consent. Eleven dancers filed the consents after the deadline, some as late as October 27, 2014.

Meanwhile, the court granted Coronado and her fellow plaintiffs, Jurate Kopecky and Enid Lopez, leave to file an amended complaint asserting similar claims for dancers working at two other clubs the individual defendants owned and operated, Treasures and Centerfolds. (Docket Entry Nos. 90, 91). On November 10, 2014, the court conditionally certified a class consisting of dancers working at Treasures and Centerfolds at any time during the past three years and issued another order granting notice. (Docket Entry No. 116). Like the prior order covering dancers working at the Gold Cup and Cover Girls clubs, the order covering the dancers working at Treasures and Centerfolds gave the "Class Members" 60 "days from the initial date of the mailing or email delivery of the Notice and Consent Form to file their Notice of Consent opting-in to this lawsuit as plaintiffs." (*Id.* at 3, ¶ 9). Unlike the prior order, the more recent order also specified that the "Consent Form must be received by Plaintiffs' Counsel in sufficient time for Plaintiffs' Counsel to file it with the Court on or before the 60th day" from the initial mailing or email delivery. (*Id.* at 3, ¶ 9). The notice of consent forms were mailed on November 17, 2014, making January 16, 2014 the opt-in deadline for the Treasures and Centerfolds clubs plaintiffs.

The defendants have moved to strike the 11 plaintiffs who opted in after the October 10, 2014 deadline for the Gold Cup and Cover Girls clubs class. (Docket Entry No. 108).[1] Coronado has responded, opposing the defendants' motion to strike the 11 late filers and moving for leave to

---

[1] The defendants moved to strike the eight plaintiffs who filed their consent forms after the deadline but before the defendants filed their motion on October 22, 2014. (Docket Entry No. 108). Since that date, three more plaintiffs have filed consent forms. (Docket Entry Nos. 109, 110, 111). The court's analysis and order covers all 11 late filers.

file additional late opt-ins for plaintiffs who worked at the Gold Cup or Cover Girls clubs until January 16, 2015, the opt-in deadline for plaintiffs who worked at the Treasures or Centerfolds clubs. (Docket Entry No. 117). If the defendants' motion to strike is granted, Coronado alternatively asks that the court toll the statute of limitations on the late filers' claims. (*Id.*).

Based on the pleadings, the motions and responses, the parties' arguments, and the applicable law, the court denies the defendants' motion to strike the 11 late opt-in plaintiffs and grants Coronado's motion for leave to file additional late opt-in plaintiffs up to January 16, 2015. (Docket Entry Nos. 108, 117). The reasons are explained below.

## II. Discussion

### A. The Applicable Legal Standard

The FLSA does not specify when a person must opt in to a collective action. The court sets that deadline. *See* 29 U.S.C. §§ 216(b), 255, 256. Nor does the FLSA provide a standard for courts to decide whether to include opt-in plaintiffs who file consent forms after the court-imposed deadline. Courts have broad discretion in determining whether to permit late opt-in filers to join a collective action. *See Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1219 (11th Cir. 2001) ("The decision to create an opt-in class under § 216(b), like the decision on class certification under Rule 23, remains soundly within the discretion of the district court."); *Hoffmann-La Roche v. Sperling*, 493 U.S. 165, 170 (1989) (holding that district courts have discretion in managing notice to potential plaintiffs in collective actions under the ADEA).

"Although the caselaw on this issue is wide-ranging, courts have generally decided the question by balancing various combinations of the following factors: (1) whether 'good cause' exists for the late submissions; (2) prejudice to the defendant; (3) how long after the deadline passed the consent forms were filed; (4) judicial economy; and (5) the remedial purposes of the FLSA."

3

*Ruggles v. Wellpoint, Inc.*, 687 F. Supp. 2d 30, 37 (N.D.N.Y. 2009) (citing cases); *see also Helton v. Factor 5, Inc.*, No. C 10-04927 SBA, 2014 WL 1725734, at *3 (N.D. Cal. Apr. 29, 2014) (applying *Ruggles* factors); *Heaps v. Safelite Solutions, LLC*, No. 2:10-CV-729, 2011 WL 6749053, at *1 (S.D. Ohio Dec. 22, 2011) (applying *Ruggles* factors); *Ayers v. SGS Control Servs., Inc.*, 2007 WL 3171342, at *4–5 (S.D.N.Y. Oct. 9, 2007) (requiring that tardy opt-in plaintiffs show good cause); *Robinson–Smith v. Gov't Empl. Ins. Co.*, 424 F.Supp.2d 117, 123–24 (D.D.C. 2006) (considering the potential prejudice to defendant and the purposes of the FLSA); *Raper v. State of Iowa*, 165 F.R.D. 89, 92 (S.D. Iowa 1996) (considering prejudice and judicial economy); *Monroe v. United Air Lines, Inc.*, 94 F.R.D. 304, 305 (N.D. Ill. 1982) (considering the extent of filing delay). Each factor is analyzed below.

### B. The Motion to Strike

#### 1. Good Cause

Coronado demonstrates good cause for the majority of the 11 late filings under the order covering the Gold Cup and Cover Girls clubs. Unlike the court's later order issuing notice to class members with potential claims against Treasures or Centerfolds, the order covering the Gold Cup and Cover Girls clubs did not specify that the class members had to deliver their signed notice of consent forms to plaintiffs' counsel *before* the 60-day deadline. Seven of the opt-in plaintiffs signed their consent forms on or before October 10, 2014, but postal delays prevented counsel from receiving them until after the deadline. Williams signed her consent form on October 3, 2014; Hibbler and Taylor each signed on October 6; Gamboa signed on October 7; Catlin and Hudson each signed on October 9; and Copeland signed October 10. (Docket Entry Nos. 103-1, 104-1, 105-1, 107-1, 109-1, and 110-1). Of the four remaining opt-in plaintiffs who signed and filed their consent forms after the October 10, 2014 deadline, three have submitted declarations stating that they did

4

not timely receive the forms because of address changes and similar reasons. (Docket Entry Nos. 117-1; 117-2; 117-3; 117-4; *see also* Docket Entry Nos. 103-1, 106-1, 107-1, 111-1).

Even when a late filer fails to demonstrate good cause, this factor may be discounted because "a rigid application of a 'good cause' test does not fully respond to the various factors with which the court must concern itself." *In re Wells Fargo Home Mortgage Overtime Pay Litig.*, No. Civ. A. MDL 06-01770, 2008 WL 4712769, at *2 (N.D. Cal. Oct. 23, 2008); *see also Ruggles*, 687 F. Supp. at 37 (not even considering good cause because "all other factors weigh[ed] in [the plaintiffs'] favor"); *Helton*, 2014 WL 1725734 at *3 ("While Plaintiffs' counsel have failed to show good cause for their belated filing of the consent to join forms, the Court finds that the other relevant factors weigh in favor of permitting the opt-in plaintiffs to join the FLSA collective action." (footnote omitted)); *Heaps*, 2011 WL 6749053, at *2 ("Although Plaintiffs have offered no good cause for their failure to timely file these consent forms, all of the other factors weigh in their favor."). In this case, factors besides good cause weigh in favor of allowing the late opt-in filers to remain in the collective action.

    **2.**    **Prejudice**

When, as here, the late filers are a small part of the overall class and the litigation is at an early stage, courts rarely find prejudice if they are allowed to opt-in. *See Heaps*, 2011 WL 6749053, at *2 ("[A]ll of these consent notices were filed with the Court within a few months after the deadline and the majority of them within one month, not presenting any unfair surprise or requiring that Defendants take any additional steps to defend this action."); *Abubakar v. Cnty. of Solano*, No. CIV. S-06-2268 LKK/EFB, 2008 WL 550117, at *2 (E.D. Cal. Feb. 27, 2008) (rejecting defendant's argument that "its potential liability would increase by 15% (based on the addition of 23 plaintiffs to the 155 current plaintiffs), that the issue of whether plaintiffs are similarly situated will be more

complicated, that there would be even more tolling dates for statute of limitations purposes, and that its discovery costs will rise"); *Robinson-Smith*, 424 F. Supp. 2d at 124 ("Allowing four more plaintiffs into the collective action already containing 269 represents only a limited additional exposure for the defendant, given the relatively small number . . . ."); *Monroe*, 94 F.R.D. at 305 ("Individual discovery for any particular plaintiff is minimal, and trial is still a few months away.").

The approach in *Benavidez v. Piramides Mayas Inc.*, No. Civ. A 09-5076, 2013 WL 1627947 (S.D.N.Y. Apr. 16, 2013), is instructive. The court allowed two plaintiffs who filed late opt-in consent forms—one nearly three months after the court's deadline—to remain in the action, despite a failure to show good cause for the late filings, because there was no prejudice to the defendants. The court stated:

> Despite the fact that Nestor Jose Sanchez Solano's opt-in consent form was filed almost three months after the deadline, it does not appear that any prejudice will attend to the defendants from deeming these two opt-in consent forms timely, given that these two plaintiffs represent only 2.7 percent of the 74 plaintiffs in these actions.

*Id.* at *3. Here, as in *Benavidez*, the percentage of plaintiffs whose consent forms were filed after the deadline—11.58%—is relatively low. An even smaller percentage—4.21%—signed the consent form after the opt-in deadline. Such a small added number is not unfairly prejudicial. *See Abubaker*, 2008 WL 550117, at *2 (holding that a 15% increase in opt-ins was not prejudicial); *Heaps*, 2011 WL 6749053, at *1-2 (determining that a roughly 10% increase (from 208 to 229) in the number of plaintiffs would not prejudice the defendants); *Wells Fargo*, 2008 WL 4712769, at *2 (no prejudice in early stage of litigation from 8.5% increase in class).

"True prejudice in this context might, for instance, consist of 'allow[ing] new plaintiffs to join and share the spoils after the battle is won, but sit on the sidelines and remain free from the consequences of an unfavorable outcome.'" *Wells Fargo*, 2008 WL 4712769, at *2 (quoting *Raper*,

6

165 F.R.D. at 92). No such circumstance is present here. "Whether or not a statute of limitations is tolled is not a persuasive consideration. Neither is any increase in the potential exposure of the defendant." *Id.* "[T]o the extent the individual [d]efendants object to the addition of the opt-in plaintiffs on the ground that they will face an increase in their potential exposure, this is not a proper consideration in determining whether to allow the opt-in plaintiffs to join this action." *Helton*, 2014 WL 1725734, at *3 n.6.

The defendants will not suffer prejudice from the addition of the 11 late filers.

### 3. The Extent of the Delay

A third and related factor is that only a short time elapsed between the court's October 10, 2014 deadline and the last filing on October 27, 2014. Courts have allowed much longer filing delays, some even after the liability phase. *See Helton*, 2014 WL 1725734, at *2 (allowing late filers who missed deadline by "approximately nine months"); *Heaps*, 2011 WL 6749053, at *2 (allowing late filings that were "within a few months after the deadline and the majority of them within one month"); *Ruggles*, 687 F. Sup. 2d at 37 (allowing late filings "within a month of the . . . deadline"); *Raper*, 165 F.R.D. at 92 (allowing untimely filings after the liability, but before damages, phase of the trial). The delay here ranged from four to seventeen days. This factor weighs in favor of allowing the 11 late filers to remain in the collective action against the Gold Cup and Cover Girls Clubs.

### 4. Judicial Economy

Allowing the late filers to remain in this collective action serves judicial economy. If the court dismissed them from the action, the late filers could file individual actions or separate collective actions. *See Akins v. Worley Catastrophe Response, LLC*, 921 F. Supp. 2d 593, 598 (E.D. La. 2013) ("The plain language of Section 216(b) does not prohibit employees from bringing more

7

than one collective action based on the same alleged violations." (citing *Yates v. Wal-Mart Stores*, 58 F. Supp. 2d 1217, 1218 (D. Colo. 1999)); *see also Monroe*, 94 F.R.D. at 305 ("[I]t should be remembered that in at least some of the cases the alternative may be to force the filing of individual lawsuits—scarcely productive of economy either for the litigants or for the courts."). "Obviously, there is little economy in spawning identical FLSA lawsuits that themselves might be properly joined with this lawsuit in the future." *Heaps*, 2011 WL 6749053, at *2 (quoting *Ruggles*, 687 F. Supp. 2d at 37); *see also Wells Fargo*, 2008 WL 4712769, at *2 ("The maintenance of several actions would partially frustrate the underlying rationale for using the class action mechanism."); *Abubakar*, 2008 WL 550117, at *2 (noting the futility in requiring late opt-in plaintiffs to file separately given the foreseeability of a consolidation order pursuant to Fed.R.Civ.P. 42(a)); *Raper*, 165 F.R.D. at 92 ("There is no need to encourage multiple actions on the same subject.").

Additionally, the defendants have moved to dismiss the case in favor of arbitration. (Docket Entry No. 112). It makes sense for the court to decide that issue for all potential plaintiffs in the same case. A contrary conclusion would unnecessarily burden the court and the parties.

This factor weighs in favor of allowing the late filers to remain in the collective action.

### 5. The FLSA's Remedial Purpose

Finally, the FLSA's remedial purpose supports allowing the late filers to remain in this action. Courts frequently consider this factor in allowing untimely opt-ins. The *Benavidez* court, for example, relied in part on the FLSA's remedial purpose in deeming timely two consent forms filed after the deadline. *See Benavides*, 2013 WL 1627947, at *3. Other courts have taken a similar approach. *See, e.g.*, *Ruggles*, 687 F. Supp. 2d at 37-38 (observing that the FLSA's remedial purpose implores a "generous reading, in favor of those whom congress intended to benefit from the law .

. . when considering issues of time limits and deadlines" (citing *Kelley v. Alamo*, 964 F.2d 747, 750 (8th Cir. 1992)); *see also Helton*, 2014 WL 1725734, at *3 ("Allowing the opt-in plaintiffs to join the FLSA collective action . . . is consistent with the broad and flexible reading of the FLSA in favor of coverage."); *Heaps*, 2011 WL 6749053, at *3 ("agree[ing] with other courts' holdings that with respect to the FLSA, '[a] generous reading, in favor of those whom congress intended to benefit from the law, is also appropriate when considering issues of time limits and deadlines'" (quoting *Kelley*, 964 F.2d at 750)); *Wells Fargo*, 2008 WL 4712769, at *2 (observing that applying "[a] generous reading [of the FLSA], in favor of those whom congress intended to benefit from the law, is also appropriate when considering issues of time limits and deadlines"); *Schaefer-LaRose*, 2008 WL 5384340, at *4 ("'[W]e should not become slaves of [a] deadline beyond its reason for existence.'" (quoting *Monroe*, 94 F.R.D. at 305)).

This factor, similar to all the others examined, weighs in favor of allowing the 11 late opt-in plaintiffs to remain in the action.

### C. Coronado's Motion for Leave to File Late Opt-Ins

Coronado has moved for leave to file other late opt-ins (apart from the 11 late filers) for the collective action covering the dancers who worked at the Gold Cup or Cover Girls clubs until the court-imposed opt-in deadline for dancers who worked at the Treasures or Centerfolds clubs. (Docket Entry No. 117). For the reasons discussed above, extending the opt-in deadline as requested does not prejudice the defendants or delay the case, makes the schedule consistent in the two related sets of claims, and promotes the FLSA's purpose. Of the roughly 2,900 prospective class members who received notice sent under the order relating to the claims involving dancers at the Treasures or Centerfolds clubs, 265 also received the notice sent under the order relating to the Gold Cup and

9

Cover Girls clubs. Ninety-five have opted into the Gold Cup/Cover Girls clubs collective action, but more could do so after receiving notice in the related Treasures/Centerfolds clubs action. The opt-in deadline for the class members who worked at the Gold Cup or Cover Girls clubs is extended to January 16, 2015, the same opt-in deadline for the class members who worked at the Treasures or Centerfolds clubs. Any notice of consent forms filed after January 16, 2015 will be rejected as untimely unless the late filer shows good cause.

### III. Conclusion

The defendants' motion to strike the 11 late opt-in filers, (Docket Entry No. 108), is denied. Coronado's motion for leave to file late opt-ins, (Docket Entry No. 117), is granted. The opt-in deadline for class members with claims against the Gold Cup, Cover Girls, Treasures, or Centerfolds clubs is January 16, 2015. Any notice of consent received after that date will be rejected unless the late filer shows good cause.

SIGNED on November 24, 2014, at Houston, Texas.

Lee H. Rosenthal
United States District Judge