UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **PAULITA CORONADO, JURATE KOPECKY, AND ENID LOPEZ, Individually and on Behalf of All Others Similarly Situated,** | § § § § § | **CIVIL ACTION NO.: 4:13-cv-02179** |
| **Plaintiffs,** | § § § | **JURY TRIAL DEMANDED** |
| **V.** | § § | |
| **D N.W. HOUSTON, INC. D/B/A/ GOLD CUP, et al.** | § § § | |
| **Defendants.** | § | |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS CLAIMS PURSUANT TO 9 U.S.C. § 4**

Plaintiffs Paulita Coronado, Jurate Kopecky, and Enid Lopez ("Representative Plaintiffs") on behalf of themselves and on behalf of Esmeralda Garza, Courtnay Falcon, Jasmine Wells, Leslie Dickinson, Robin Sandwick, Vanessa Argueta, Brittany Brown, Unique Johnson, Angelica Beken, Crystal Gross, Sabrina Rios, Ranesha Newton, Veronica Arredondo, Amber Kolenda, Tabbitha Martin, Hollie Powell, Jennifer Beals, Sarah Storm, Joy Murphy, Vanessa Gross, Unique Roden, Ebonee Williams, Mary Jane Trueman, Krystan Murphy, Stephanie Nguyen, Cami Jo Nelson, Amber Poyer, Nichole Jones, Crystal Phears, Lela Jordan, Slonne Blanco, Kaila Childress, Jasmine Malone, and Amber Uddin (collectively herein, "Plaintiffs") file this Response to Defendants' D.N.W. Houston, Inc., d/b/a Gold Cup ("Gold Cup"), W.L. York, Inc., d/b/a Cover Girls Houston ("Cover Girls Houston"), D. Houston, Inc., d/b/a Treasures Houston ("Treasures"), A.H.D. Houston, Inc. d/b/a Centerfolds ("Centerfolds"), Ali Davari, and Hassan Davari's ("Defendants") Motion to Dismiss Claims Pursuant to 9 U.S.C. §4, (Doc. No. 36) and respectfully state as follows:

1

## I.      INTRODUCTION AND STAGE OF THE PROCEEDINGS.

Plaintiffs filed this lawsuit as a collective action alleging Defendants misclassified all dancers as independent contractors and denied them minimum wages and overtime pay in violation of the Fair Labor Standards Act ("FLSA").  On September 12, 2014, Plaintiffs filed their First Amended Complaint adding D. Houston, Inc., d/b/a Treasures Houston ("Treasures") and A.H.D. Houston, Inc. d/b/a Centerfolds ("Centerfolds") as Defendants.  Doc. No. 91. Currently, 95 total plaintiffs have joined the lawsuit.   However, the Notice of Rights was recently sent out on November 17, 2014 to approximately 2,900 additional class members who worked at Treasures and/or Centerfolds.  Plaintiffs anticipate additional dancers joining this litigation.  Defendants filed a motion to dismiss the claims of 34 opt-in plaintiffs based on two purported arbitration agreements.   Defendants argue that the "old purported arbitration agreement" applies to 33 opt-in plaintiffs and the "new purported arbitration agreement" applies to one opt-in plaintiff.  For reasons herein, Defendants' Motion with regards to both purported arbitration agreements should be denied.

## II.      SUMMARY OF ARGUMENT

Defendants' purported arbitration clause contained in the "License and Access Agreement" fails for a number of reasons and the Plaintiffs' claims should not be dismissed from the present litigation.  In summary, Defendants' Motion fails for the following reasons:

(1)      There is no agreement to arbitration because there is no consideration. The "old" arbitration agreement can be terminated at any time and does not contain a savings clause, rendering any consideration illusory.

(2)      The purported arbitration clause in the "old agreement" does not require Plaintiffs to arbitrate their claims against Ali Davari and Hassan Davari ("Davaris") and in fact, specifically prohibits it by explicitly stating "[t]he arbitrator's authority to resolve and make written awards is limited to claims between you **and** W.L. York, Inc. d/b/a Cover Girls **alone**."  As such, the Plaintiffs should not be

2

compelled to arbitrate their claims against the Davaris, even if the court compels arbitration against the corporate Defendants.

(3)     No estoppel argument applies to allow the non-signatories to enforce the "old arbitration agreement, because Texas does not recognize *concerted misconduct* as a means for the remedy of equitable estoppel.

(4)     The new and old arbitration clauses are unconscionable. The old arbitration agreement imposes by contract a more limited statute of limitation by requiring dancers to clear a 45-day procedural hurdle to attempt mediation prior even initiating arbitration. The new arbitration agreement more brazenly imposes a more limited statute of limitation by requiring arbitration to be **"*initiated*"** only after mediation or the 45 day procedural hurdle.    Additionally, the "new" arbitration clause states that should the dancer prevail, "the dancer shall surrender, reimburse and pay to Centerfolds all money received by the dancer at any time" essentially waiving a plaintiffs' right to damages under the FLSA. Lastly, the arbitration agreements are unconscionable because they illegal create a new right that does not exist under the FLSA for the putative employer to recover attorneys' fees in the event the dancer does not prevail.

### III.     Legal standard: Defendants' burden to compel this matter to arbitration.

There is a two-step inquiry to determine whether a party should be compelled to arbitrate: (1) whether the parties agreed to arbitrate the dispute and, if so, (2) whether any federal statute or policy renders the claims non-arbitrable.[1]    When analyzing step one, there are two considerations: (a) whether there is a valid agreement to arbitrate between the parties and (b) whether the dispute in question falls within the scope of that agreement.[2]    The party seeking to compel arbitration has the burden to establish that a valid arbitration agreement exists.[3]    This requires a showing that the agreement containing the arbitration clause "meets the requirements of general contract law."[4]    Submission of an authenticated copy of the agreement is necessary.[5]

---

[1] *JP Morgan Chase & Co. v. Conegie ex rel Lee*, 492 F.3d 596, 598 (5th Cir. 2007).

[2] *Id.*

[3] *In re Oakwood Mobile Homes, Inc.*, 987 S.W.2d 571, 573 (Tex. 1999); *Wachovia Sec., L.L.C. v. Emery*, 186 S.W.3d 107, 113 (Tex. App.—Houston [1st Dist.] 2005, org. proceeding).

[4] *See In re Advanced PCS Health L.P.*, 172 S.W.3d 603, 606 (Tex. 2005); *UBS Fin. Serv., Inc. v. Branton*, 241 S.W.3d 179, 184 (Tex. App.—Fort Worth 2007, no pet.).

In this case, there is no need to address whether the dispute in question falls within the scope of that agreement, (b) above, because there is no valid agreement to arbitrate. The Federal Arbitration Act ("FAA") reflects a "liberal federal policy favoring arbitration."[6]  However, the "federal policy favoring arbitration does not apply to the determination of whether there is a valid agreement to arbitrate between the parties;" rather, ordinary contract principles will determine what parties are bound.[7]  It is well established that an agreement to arbitrate is a matter of contract.[8]  Thus, courts apply ordinary state-law principles that govern the formation of contracts.[9]

"[A]n employer attempting to enforce an arbitration agreement must show the agreement meets **all** requisite contract elements."[10]  The employer "'must present complete summary proof of his case in chief proving the existence of an arbitration agreement covering the claims at issue."[11]  Defendants bear the burden of showing a valid arbitration agreement existed.[12]  Defendants have only presented purported arbitration agreements between some clubs and some

---

[5] *In re H.E. Butt Grocery Co.*, 17 S.W.3d 360, 367 (Tex. App.—Houston [14th Dist.] 2000, orig. proceeding.).

[6] *CompuCredit Corp. v. Greenwood*, 132 S. Ct. 665, 669, 2012 WL 43514, at *3 (Jan. 10, 2012) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).

[7] *Morrison v. Amway Corp.*, 517 F.3d 248, 254 (5th Cir. 2008); *Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002).

[8] *Carey v. 24 Hour Fitness, USA, Inc.*, No. 10-20845, 2012 WL 205851, at *2 (5th Cir. Jan. 25, 2012).

[9] *Morrison*, 517 F.3d at 254. Here, Texas law applies.

[10] *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 228 (Tex. 2003) (emphasis added).

[11] *Murdock v. Trisun Healthcare, LLC*, 03-10-00711-CV, 2013 WL 1955767 *2 (Tex. App.—Austin May 9, 2013, no pet.) (*citing*, *In re Jebbia*, 26 S.W.3d 753, 757 (Tex. App.—Houston [14th Dist.] 2000, no pet.)).

[12] *Weekley Homes, L.P. v. Rao*, 336 S.W.3d 413, 419 (Tex. App.—Dallas 2011, pet. denied) ("A party attempting to compel arbitration under the FAA must '(1) establish the existence of a valid arbitration agreement…") (internal citations omitted).

plaintiffs. Accordingly, for the clubs for which the Defendants have not presented arbitration agreements, the plaintiffs should be entitled to remain in federal court to pursue those claims.

"State-law contract principles govern questions of contract formation."[13] In Texas, "[t]he elements needed to form a valid and binding contract are (1) offer; (2) acceptance in strict compliance with the offer's terms; (3) a meeting of the minds; (4) consent by both parties; (5) execution and delivery; and (6) consideration."[14] State-law contract principles also apply to equitable estoppel theories. Here, Defendants have failed to show there is a valid contract because the purported agreements contain illusory consideration; Defendants have failed to provide any agreements to arbitrate between the 33 opt-in plaintiffs who are allegedly subject to the "old" arbitration clause and the individually named Defendants; further, the purported agreements presented are unconscionable because they eliminate Plaintiffs' FLSA substantive rights.

## IV. Arguments supporting denial of Defendants' Motion to Compel Arbitration.

### (1) The "License and Access Agreement" is based on illusory consideration because Defendants can terminate the contract unilaterally and retroactively.

"A promise is illusory if it does not bind the promisor, such as when the promisor retains the option to discontinue performance."[15] "When illusory promises are all that support a purported bilateral contract, there is no mutuality of obligation, and therefore, no contract."[16] Texas law renders an arbitration clause illusory and unenforceable when it allows one party to

---

[13] *Vallejo*, 2013 WL 2417898 *5 (S.D. Tex. June 4, 2013) (*citing*, *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S. Ct. 1920, (1995)).

[14] *Nazareth Hall Nursing Ctr. v. Melendez*, 372 S.W.3d 301, 305 (Tex. App.—El Paso 2012, no pet.); *Advantage Physical Therapy, Inc. v. Cruse*, 165 S.W.3d 21, 24 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

[15] *Carrell v. L & S Plumbing P'ship, Ltd.*, CIV.A. H-10-2523, 2011 WL 3300067 *3 (S.D. Tex. Aug. 1, 2011) (citing *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 849 (Tex.2009)).

[16] *Id*. (citing, *Vanegas v. Am. Energy Servs.,* 302 S.W.3d 299, 301–02 (Tex.2009)).

avoid its obligation by amending or terminating a provision unilaterally.[17]   "Put differently, where one party to an arbitration agreement seeks to invoke arbitration to settle a dispute, if the other party can suddenly change the terms of the agreement to avoid arbitration, then the agreement was illusory from the outset."[18]   If the modification or elimination of the clause does not apply retroactively so as to allow the avoidance of arbitration, the promise to arbitrate is not illusory.[19]   However, the arbitration agreement need not state that the modification will apply retroactively, and in fact if it is silent, the law presumes that it applies retroactively.[20]

Here, the "License and Access Agreement" states, "[Defendants] and the Dancer shall have the right to **terminate** this agreement at any time and for any reason."[21]   The "License and Access Agreement" contains the arbitration clause.   At best, the agreement is silent regarding the retroactivity of the termination.   Unmistakably, the agreement does not contain the required "survival clause" which is common in arbitration agreements that would continue the rights and duties to arbitration even after termination.   Accordingly, because both parties have the ability to not be bound by the terms of the purported contract, the agreement is illusory and does not bind the parties to arbitration.   On the other hand, if Plaintiffs are allowed to terminate the purported

---

[17] *Carey v. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202, 205 (5th Cir. 2012); see also, *Sosa v. PARCO Oilfield Services, Ltd.*, CIV.A.2:05-CV-153, 2006 WL 2821882 (E.D. Tex. Sept. 27, 2006) ("The Texas Supreme Court noted most courts have held that 'if a party retains the unilateral, unrestricted right to terminate the arbitration agreement, it is illusory.'").

[18] *Carey v. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202, 205 (5th Cir. 2012).

[19] *Torres v. S.G.E. Mgmt., L.L.C.,* 397 Fed. Appx. 63, 67-68 (5th Cir. 2010).

[20] *Torres v. S.G.E. Mgmt., L.L.C.,* 397 Fed. Appx. 63, 68 (5th Cir. 2010) (finding agreement retroactive when the agreement contains no clause preventing a modification from applying to disputes arising before the modification.); *Carey v. 24 Hour Fitness, USA, Inc.,* 669 F.3d 202, 206 (5th Cir. 2012).

[21] Doc. No. 36-2, p. 9 ¶ 4; Doc. No. 36-3, p. 9-10 ¶ 4; Doc. No. 36-4, p. 7 ¶ 4; Doc No. 36-5, p. 9 ¶ 4 (emphasis added).

arbitration agreement "at any time," they hereby terminate it.   Either way, the purported

agreement is unenforceable.

**(2)  The License and Access Agreement does not require Plaintiffs to arbitrate their claims against Ali Davari and Hassan Davari.  The parties chose precise and clear language specifically prohibiting application of the arbitration agreement to any person other than the dancer and the corporate defendants.**

Under the FLSA, liability against an individual named as Defendant is possible and

common.[22]   With respect to whether plaintiffs agreed to arbitrate claims against the Davari

brothers individually, as mentioned above, the first question is whether there is a valid agreement

to arbitrate.  Here there simply is no agreement to arbitrate between the Plaintiffs and Ali and

Hassan Davari ("the Davaris").[23]   Defendants have failed to produce a signed arbitration

agreement between the Davaris and the Plaintiffs to arbitrate claims arising from their

employment at Gold Cup, Cover Girls, Centerfolds or Treasures.  "If the parties have not agreed

to arbitration, no trial court has discretion to make them go."  *In re Merrill Lynch Trust Co. FSB*,

235 S.W.3d 185, 193 (Tex. 2007).   Accordingly, even if the Court finds there is a valid

agreement to arbitrate between Gold Cup/Cover Girls/Centerfold and/or Treasures on the one

hand and Plaintiffs on the other, it does not include the Davaris individually.[24]

---

[22] *Donovan v. Grim Hotel Co.,* 747 F.2d 966, 972 (5th Cir. 1984) (finding individual employer liability when defendant "held their purse-strings and guided their policies. It was only he who could authorize compliance with the Fair Labor Standards Act."); *Shultz v. Mack Farland & Sons Roofing Co.*, 413 F.2d 1296, 1302 (5th Cir. 1969) ("[T]he court below correctly enjoined the defendants, including William A. McFarland, from future violations of the Act and from the continued withholding of unpaid overtime compensation found to be due to their employees."); *Donovan v. Janitorial Services, Inc.,* 672 F.2d 528, 531 (5th Cir. 1982) ("[The facts] support a conclusion that Meis is an employer of the Johnson Disposal employees, within the meaning of FLSA s 3(d), 29 U.S.C. s 203(d)…"); *Reich v. Priba Corp.*, 890 F. Supp. 586, 591 (N.D. Tex. 1995) ("Because Izzedin has been found to be an employer within the meaning of the FLSA, he is jointly and severally liable for all damages which stem from Cabaret Royale's failure to comply with the provisions of the FLSA."); *Lee v. Coahoma County, Miss.,* 937 F.2d 220, 226 (5th Cir. 1991); *Reich v. Japan Enterprises Corp.,* 91 F.3d 154 (9th Cir. 1996) ("Sawada was personally liable for violations at Ameriana's New Happiness Club.").

[23] *In re Banc One Inv. Advisors Corp.,* No. 01-07-01021-CV, 2008 WL 340507, at *2 (Tex. App. Feb. 7, 2008) ("Generally, only signatories to an arbitration agreement are bound by the agreement.").

[24] Exhibit A *Lott v. DirecTV, et. al.* (denying to compel arbitration for a non-signatory).

7

To remove any doubt, the agreement specifically prohibits any other party other than the dancer and the club's corporate entity to arbitrate their claims.  Defendants drafted the arbitration clause to provide:

> **"no arbitration award or decision will have any preclusive effect as to issues or claims in dispute with anyone who is not a named party to the arbitration."**

And the parties to the "old" arbitration agreement are "**you and W.L. York, Inc. d/b/a Cover Girls <u>alone</u>;**"[25] "**you and D.N.W. Houston, Inc. d/b/a Gold Cup <u>alone</u>;**"[26] and "**you and AH.D. Houston, Inc. d/b/a Centerfolds <u>alone</u>.**"[27] The beginning of paragraph 10 also makes it clear that "parties" is defined as the corporate defendant and the dancer.  *See*, "[t]he parties, [corporate defendant], and the dancer whose name is set below…"[28] The scope of an arbitration agreement is limited to that contracted by the parties.   As if this were not clear enough, Defendants went even further to exclude application to the Davari brothers by inserting the following language:

> **"arbitrator's authority to resolve and make written awards is limited to claims between [the dancer] and [the corporate entity] alone."**[29]

Likewise, the corporate Defendants went out of their way to clarify that the Davari brother's individually cannot be parties to the arbitration in any representative capacity by drafting the following language in paragraph 11:

---

[25] Doc. No. 112-20 (Exhibit S of Defendants' Motion-purported arbitration agreement for Jennifer Beals and Cover Girls).

[26] Doc. No. 112-16 (Exhibit O of Defendants' Motion-purported arbitration agreement for Veronica Arredondo and Gold Cup).

[27] Doc. No. 112-21 (Exhibit T of Defendants' Motion-purported arbitration agreement for Sarah Storm and Centerfolds).

[28] Defendants' Motion to Dismiss, pg. 9.

[29] *See*, Doc. No. 112-20, Doc. No. 112-16, and Doc. No. 112-21 (emphasis added in bold).

"Arbitration shall proceed solely on an individual basis without the right for any claims to be arbitrated on a collective or class action basis or on bases involving claims brought in a purported representative capacity on behalf of others."[30]

Even if Plaintiffs wanted to assert claims against the Davari brothers in their individual capacity, Defendants drafted the arbitration clause to specifically prohibit such application:

**"Claims may not be joined or consolidated unless agreed to in writing by all parties."[31]**

Defendants cannot argue this provision applies only to joining multiple *dancers* in a single arbitration, but allows multiple *defendants* to be joined in a single arbitration.  To give any meaning to this clause, drafted by the Defendants, it means neither other dancers nor other defendants (i.e., Davari brothers) can be part of the same arbitration.  As a result, the Plaintiffs should not be compelled to arbitrate their claims against the Davaris.[32]

**(3) The Davari Defendants cannot rely on estoppel grounds to allow the non-signatories to enforce the old arbitration agreement because Texas does not recognize *concerted misconduct* as a basis for equitable estoppel.**

Defendants realized that the individual defendants are parties to the arbitration contract and have since modified the language of the "new" purported arbitration agreement to define the corporate entity as "its owners, directors, officers, managers, employees or agents."[33] Defendants argue that the doctrine of equitable estoppel applies because of interdependent and concerted misconduct, but cite to a Middle District of Florida case applying Florida State law in

---

[30] *See*, Defendants' Motion to Dismiss, pg. 10 ¶ 11.

[31] *Id*.

[32] *In re Merrill Lynch Trust Co. FSB*, 235 S.W.3d 185, 194 (Tex. 2007) ("And while conspirators consent to accomplish an unlawful act, that does not mean they impliedly consent to each other's arbitration agreements. **As other contracts do not become binding on nonparties due to concerted misconduct,** allowing arbitration contracts to become binding on that basis would make them easier to enforce than other contracts, contrary to the Arbitration Act's purpose.") (emphasis added).

[33] Defendants' Motion to Dismiss, pg. 10.

support.[34]   Here, unquestionably, Texas law controls the applicability of equitable estoppel.[35] Texas courts have held, "…we have never compelled arbitration based solely on substantially interdependent and concerted misconduct."[36]   Consequently, Defendants benefit from equitable estoppel based on interdependent and concerted misconduct to compel arbitration against non-signatories.  *In re Merrill Lynch Trust Co. FSB*, 235 S.W.3d 185, 194 (Tex. 2007) ("And while conspirators consent to accomplish an unlawful act, that does not mean they impliedly consent to each other's arbitration agreements.  **As other contracts do not become binding on nonparties due to concerted misconduct,** allowing arbitration contracts to become binding on that basis would make them easier to enforce than other contracts, contrary to the Arbitration Act's purpose.") (emphasis added).

As stated in *In re Merrill Lynch Trust Co., FSB*, "arbitration 'is a matter of consent, not coercion, that the Act does not require parties to arbitrate when they have not agreed to do so, and its purpose is to make arbitration agreements as enforceable as other contracts, but not more so. Thus, arbitration is not required merely because two claims arise from the same transaction…" 235 S.W.3d 185, 192 (Tex. 2007).  Not only was the purported arbitration clause never signed by the Davaris, it explicitly excludes the Davaris from arbitration.  The law which Defendants cite involves situations where the plaintiffs are seeking to enforce part of the agreement containing the arbitration clause against the non-signatory.  However, here the

---

[34] *See*, Defendants' Motion to Dismiss, pg. 23, (citing, *Maldonado v. Mattress Firm, Inc.,* No. 8:13-CV-292-T-33AEP, 2013 WL 2407086, at *4 (M.D. Fla. June 3, 2013)) ("Under Florida law, a non-signatory to an arbitration agreement may compel a signatory to arbitrate under the theory of equitable estoppel.");

[35] *Maldonado v. Mattress Firm, Inc.,* No. 8:13-CV-292-T-33AEP, 2013 WL 2407086, at *4 (M.D. Fla. June 3, 2013) ("However, 'a nonparty may force arbitration [only] if the relevant state contract law allows him to enforce the agreement to arbitrate.") (internal citations omitted).

[36] *In re Merrill Lynch Trust Co. FSB*, 235 S.W.3d 185, 191 (Tex. 2007); *In re Banc One Inv. Advisors Corp.,* No. 01-07-01021-CV, 2008 WL 340507, at *2 (Tex. App. Feb. 7, 2008) ("Texas Supreme Court … has never compelled arbitration based solely on interdependent and concerted misconduct.").

10

Plaintiffs are not seeking to enforce any part of the License and Access Agreement and as such are not trying to have it "both ways."[37]

Defendants also cite to a case where they allege this Court compelled arbitration against a non-signatory; however, in that case, the arbitration agreement contained the following language, "ITT CFC and EMPLOYEE agree that any dispute between them or claim by either against the other ***or any agent or affiliate*** of the other shall be resolved by binding arbitration...."[38]  The language in the purported old arbitration agreement states the opposite and emphasizes that the arbitrator has authority only over the claims between the corporate defendant and the dancer. Specifically, the old purported arbitration clause states that, "[t]he arbitrator's authority to resolve and make written awards is **limited to claims between you and [corporate entity] alone**…No arbitration award or decision will have any preclusive effect as to issues or claims in any dispute with anyone **who is not a named party** to the arbitration…The parties, [corporate entity] and the dancer whose name is set below..."[39]  As discussed above, the language of the purported arbitration clause explicitly states that it is an agreement between the dancer and the corporate entity alone.

Even if the Court finds that equitable estoppel is applicable to find the contract exists as to the Davaris and the dancers, the *scope of the arbitration* clause itself authorizes does not grant authority to the arbitrator to award any relief for or against the Plaintiffs or the Davaris. The

---

[37] *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 361 (5th Cir. 2003) ("[The plaintiff] cannot, on the one hand, seek to hold the nonsignatory liable pursuant to duties imposed by the agreement, which contains an arbitration provision, but, on the other hand, deny arbitration's applicability because the defendant is a nonsignatory.")

[38] *Hampton v. ITT Corp.*, 829 F. Supp. 202, 203 (S.D. Tex. 1993) (emphasis added); *see also, Pacheco v. PCM Const. Servs., LLC,* No. 3:12-CV-4057-L, 2014 WL 145147, at *2 (N.D. Tex. Jan. 15, 2014) (containing arbitration language as follows, "TO SUBMIT ANY DISPUTE BETWEEN EMPLOYEE AND THE COMPANY, OR ANY OF THE COMPANY'S ***EMPLOYEES, REPRESENTATIVES, OR AGENTS***, TO MANDATORY, BINDING ARBITRATION.") (emphasis added).

[39] Defendants' Motion to Dismiss, pg. 9-10.

agreement states that the "**arbitrator's authority to resolve and make written awards is limited to claims between [the dancer] and [the corporate entity] alone**."[40]   As such, the scope of the arbitration agreement is limited to claims between the corporate defendant and the dancer, and the claims between the dancer and the Davaris should remain in federal court.

Holding otherwise would put the Plaintiffs in a positon of having to arbitrate claims against the Davari brothers who could object to any award against them due to the limiting language of the contract regarding the arbitrator's authority.

(4) **The License and Access Agreement is unconscionable because it amounts to a waiver of Plaintiffs' substantive claims under the FLSA, which is strictly forbidden.**

Texas law renders unconscionable contracts unenforceable.[41] The License and Access Agreement is unconscionable and as such should not be enforced by this court.  Substantive unconscionability refers to the fairness of the arbitration provision itself.[42] "The test for substantive unconscionability is whether, 'given the parties' general commercial background and the commercial needs of the particular trade or case, the clause involved is so one-sided that it is unconscionable under the circumstances existing when the parties made the contract.'"[43] Substantive rights to minimum wage and overtime pay may not be waived by contract or otherwise.[44]   "One way an arbitration agreement may make a contract unconscionable is if "the

---

[40] See, Doc. No. 112-20, Doc. No. 112-16, and Doc. No. 112-21.

[41] *Carrell v. L & S Plumbing P'ship, Ltd.*, CIV.A. H-10-2523, 2011 WL 3300067 (S.D. Tex. Aug. 1, 2011); *In re Olshan Found. Repair Co., LLC*, 328 S.W.3d 883, 892 (Tex. 2010).

[42] *Delfingen US-Texas, L.P. v. Valenzuela*, 407 S.W.3d 791, 797-98 (Tex. App.—El Paso 2013, no pet.); see also, *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 499 (Tex. 1991).

[43] *Hafer v. Vanderbilt Mortg. & Fin., Inc.*, 793 F. Supp. 2d 987, 1004 (S.D. Tex. 2011) (citing, *Palm Harbor Homes, Inc.*, 195 S.W.3d at 678 (quoting *FirstMerit Bank*, 52 S.W.3d at 757)).

[44] *Mayhue's Super Liquor Stores, Inc. v. Hodgson*, 464 F.2d 1196, 1197 (5th Cir. 1972)  ("The right to a minimum wage under the Fair Labor Standards Act cannot be waived by agreement between the employee and his employer."); *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 704, (1945) ("Where a private right is granted in the

existence of large arbitration costs could preclude a litigant . . . from effectively vindicating [his or her] federal statutory rights in the arbitral forum."[45]

On this issue, the U.S. Supreme Court has ruled that, "decisions interpreting the FLSA have frequently emphasized the nonwaivable nature of an individual employee's right to a minimum wage and to overtime pay under the Act."[46]  As such, the U.S. Supreme Court has, "held that FLSA rights cannot be abridged by contract or otherwise waived because this would 'nullify the purposes' of the statute and thwart the legislative policies it was designed to effectuate."[47]  Moreover, the "principal congressional purpose in enacting the [FLSA] was to protect all covered workers from substandard wages and oppressive working hours, 'labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers.'" *Id.* at 739.  Indeed, the FLSA's provisions "are remedial and humanitarian in purpose," and deal not with, "mere chattels or articles of trade but with the rights of those who toil, of those who sacrifice a full measure of their freedom and talents to the use and profit of others.  Those are the rights that Congress has specially legislated to protect." [48]  It is vital that, "[s]uch a statute must not be interpreted or applied in a narrow, grudging manner."[49]

---

public interest to effectuate a legislative policy, waiver of a right so charged or colored with the public interest will not be allowed where it would thwart the legislative policy which it was designed to effectuate.").

[45] Exhibit A *Lott v. DirecTV, et. al.* Civil Action No. 9:11-cv-00173-RC (citing *In re Olshan Found. Repair Co., LLC*, 328 S.W.3d 883, 892 (Tex. 2010)).

[46] *Barrentine v. Arkansas-Best Freight Sys., Inc.,* 450 U.S. 728, 740 (1981).

[47] *Id.*).

[48] *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 597 (1944); see also, *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 710, 65 S. Ct. 895, 903, 89 L. Ed. 1296 (1945) ("To allow contracts for waiver of liquidated damages approximates situations where courts have uniformly held that contracts tending to encourage violation of laws are void as contrary to public policy.").

[49] *Id.*

The law is clear that any employer who violates the provisions of section 206 or section 207 of the FLSA is liable to the employee or employees in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and liquidated damages. 29 U.S.C. § 216.  Employees are entitled to liquidated damages under the FLSA in an amount equal to their awards for minimum wage and overtime payments. *Id.*  Plaintiffs who are successful in their claims are also entitled to reasonable expenses and **attorney's fees**. *Gagnon v. United Technisource, Inc.,* 607 F.3d 1036, 1043 (5th Cir. 2010).

Here, the purported arbitration agreement states that "the Dancer shall indemnify, hold harmless and pay for [Defendants'] Defense from and against any and all claims, losses, or liability including attorneys' fees, arising from or relating to the Dancer's relationship with [Defendants], including liability arising from [Defendants'] own negligence."[50]  It also states, "In the event any action is commenced to enforce or interpret the terms or conditions of this Agreement, [Defendants] shall in addition to any costs or other relief, be entitled to recover its reasonable attorneys' fees."[51]  These indemnification provisions not only prevent the Plaintiff from recovering attorneys' fees, but force the Plaintiff to pay for Defendants' attorneys' fees **regardless of who prevails, a** fee-shifting provision that is absent from the FLSA due to its remedial nature.  Clearly, using the term "arising from" Defendants intended the agreement to cover every potential claim that could ever be made, including a claim under the FLSA.  This is an attempt to waive a substantive right under the FLSA (recover of attorneys' fees to a successful plaintiff).  Further, the fee-shifting provision creates the "fear" that the FLSA was designed to

---

[50] Doc. No. 36-2, p. 9; Doc. No. 36-3, p. 9-10; Doc. No. 36-4, p. 7; Doc No. 36-5, p. 9.

[51] *Id.*

prevent.[52]   The mere threat of having to pay tens of thousands of dollars imposes a real deterrence to even asserting, nevertheless exercising their rights.  This deterrence through fear is something the Defendants have previously attempted.[53]

As one court put it in examining a provision where the Plaintiff had to pay for Defendants' attorney's fees if they did not prevail, "This effectively turns the FLSA on its head: 29 U.S.C. § 216(b) provides that a successful claimant has the right to receive reasonable attorney's fees and costs."[54]   Here, the provisions are even more outrageous.  Not only does it dictate that the Plaintiffs pay for Defendants' attorneys' fees, but the indemnification provision bars Plaintiffs from recovering their attorneys' fees (or anything for that matter).  Put simply, the arbitration clause is unconscionable on its face.

Further, the FLSA has a two year statute of limitations and extends it to three years if there is a willful violation by the employer.[55]   The statute of limitations is stopped by the filing of the employee's written consent.[56]   If the employee previously continuously worked for the Defendants within and outside of those two years, if the violation is not found to be willful, each day that passes diminishes his or her claim by a day's worth.  It is not a stretch of the imagination to conclude that it is the employer's purpose to delay the employees' filing of their consents in order to diminish their claims.  Here, Plaintiffs are forced to mediate their claims prior to filing for arbitration and are not permitted to file their arbitration demand until after "the

---

[52] *Silva v. Miller*, 547 F. Supp. 2d 1299, 1304 (S.D. Fla. 2008) aff'd, 307 Fed. Appx. 349 (11th Cir. 2009) ("Congress encourages the filing of meritorious FLSA claims by providing for the recovery of reasonable attorney's fees.")

[53] *See* Doc. No. 14 (Defendants' Motion for Leave to File Counterclaim) and Doc. No. 21 (Defendants' Reply in support of Counterclaim).

[54] *See* Exhibit A, p. 7 (*Lott v. DirecTV, et. al*).

[55] 29 U.S.C. §255(a).

[56] 29 U.S.C. §256.

initial mediation session or until 45 days after the filing the written request for mediation, whichever occurs first."[57]  Because damages accrue literally on a daily or weekly basis under the FLSA, the mandatory delay of mediation mean the employees lose their FLSA rights.[58]  Such surreptitious waivers are just as illegal as explicit ones, rendering the arbitration agreement void.

Moreover, the License and Access Agreement is unconscionable because its language requires the Plaintiffs to pay for the entire cost of arbitration and the arbitrators' fee. An arbitration clause is unenforceable when it imposes substantial costs on one of the parties to the agreement.  *See, e.g., Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 91 (2000).  Specifically, the United States Supreme Court recognized that "the existence of large arbitration costs could preclude a litigant … from vindicating federal statutory rights." *Id.*   In this case, the arbitration agreement mandates that the arbitration proceeding be conducted through the American Arbitration Association ("AAA").

The License and Access Agreement states, "The Dancer shall **indemnify**, hold harmless, and **pay for [Defendants'] defense** from and against any and all claims, losses, or liability, including attorneys' fees, arising from or relating to the Dancer's relationship with [Defendants]…" (emphasis added).  This indemnification provision is broad enough to include the entire cost of arbitration including the filing fee and the arbitrators' fee, which greatly exceed the cost of filing in federal court.[59]  Further, if interpreted as silent on the issue of cost, under AAA rules, absent a statement in the arbitration clause regarding who pays for such fees upfront,

---

[57] Doc. No. 36-2, p. 9 ¶ 10; Doc. No. 36-3, p. 9-10 ¶ 10; Doc. No. 36-4, p. 7 ¶ 10; Doc No. 36-5, p. 9 ¶ 10 ("All disputes, claims, or controversies…shall be submitted to the [AAA] for mediation.").

[58] *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 597 (1944); see also, *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 710, 65 S. Ct. 895, 903, 89 L. Ed. 1296 (1945) ("To allow contracts for waiver of liquidated damages approximates situations where courts have uniformly held that contracts tending to encourage violation of laws are void as contrary to public policy.").

[59] Exhibit B (AAA cost of arbitration).

16

both parties are required to pay the arbitrator's fees and related costs equally.  Such an agreement is unconscionable because it imposes substantial costs on the Plaintiffs relative to the Defendants.  Thus, the costs for this arbitration are substantially greater than the costs that would be incurred in litigation.  In fact, these costs are weighed heavily against the Plaintiffs.  Thus, the agreement is unconscionable as it prevents the Plaintiffs from litigating their statutory rights under the FLSA.

Lastly, the agreement is unconscionable because it limits the damages that the dancers can claim and essentially limits their recovery to less than the minimum wage per hour.  The "new" agreement states that if the dancer is found to be an employee, the dancer "shall surrender, reimburse and pay to Centerfolds all money received by the dancer at any time she performed on the premises of centerfolds."[60] This provision waives substantive FLSA rights.

"The FLSA requires employers to pay employees a minimum wage of $7.25 an hour for any hours worked on or after July 24, 2009."[61]  "[A]ll tips received by an employee must be retained by the employee…"[62]  Here, there is no question that the money received directly from customers for dances performed is a tip.  To mandate that dancers return those tips to the club if found to be employees amounts to a waiver of substantive rights and as such should invalidate the arbitration clause.

## V.    CONCLUSION.

For the reasons stated herein, Defendants' Motion to Dismiss Claims Pursuant to 9 U.S.C. §4 should be denied in its entirety.  Alternatively, the Court should deny Defendants'

---

[60] Doc. No. 112, Defendants' Motion to Dismiss, pg. 15.

[61] *Pedigo v. Austin Rumba, Inc.,* 722 F. Supp. 2d 714, 721 (W.D. Tex. 2010).

[62] *Pedigo v. Austin Rumba, Inc.,* 722 F. Supp. 2d 714, 721 (W.D. Tex. 2010).

Motion with respect to the individual Defendants for the reasons stated above, and grant any other relief to which the Plaintiffs may be entitled at law or in equity.

Respectfully submitted,

KENNEDY HODGES, L.L.P.

By:  /s/ Galvin B. Kennedy
     Galvin B. Kennedy
     Gkennedy@kennedyhodges.com
     State Bar No. 00796870
     Federal Bar No. 20791
     711 W. Alabama St.
     Houston, TX 77006
     Telephone: (713) 523-0001
     Facsimile: (713) 523-1116

LEAD ATTORNEY IN CHARGE FOR PLAINTIFFS
AND CLASS MEMBERS

OF COUNSEL:
Beatriz Sosa-Morris
State Bar No. 24076154
Federal Bar No. 1552137
KENNEDY HODGES, LLP
711 W. Alabama Street
Houston, Texas 77006
Telephone: 713-523-0001
Facsimile:  713-523-1116
Bsosamorris@kennedyhodges.com

## CERTIFICATE OF SERVICE

I certify that on December 2, 2014, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record:

/s/ Beatriz Sosa-Morris
Beatriz Sosa-Morris