**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| PAULITA CORONADO, JURATE KOPECKY, and ENID LOPEZ, *Individually and on Behalf of All Others Similarly Situated*, | § § § § § | |
| Plaintiffs, | § § | |
| VS. | § § | CIVIL ACTION NO. H-13-2179 |
| D N. W. HOUSTON, INC. D/B/A/ GOLD CUP, W.L. YORK, INC. D/B/A COVER GIRLS, D. HOUSTON, INC. D/B/A TREASURES, A.H.D HOUSTON, INC. D/B/A CENTERFOLDS, ALI DAVARI, AND HASSAN DAVARI, | § § § § § § § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

The defendants have moved to require 34 of the plaintiffs to arbitrate their FLSA claims because they signed agreements to do so after this suit began. (Docket Entry No. 112). The plaintiffs have responded to the motion to compel, (Docket Entry Nos. 121), and the defendants and intervenors have replied, (Docket Entry Nos. 126). Based on the pleadings, the motions and responses, the parties' arguments, the record, and the applicable law, the court denies the motion to compel arbitration as to 33 of the plaintiffs but grants it as to the one plaintiff who signed a different and enforceable arbitration agreement. The reasons for these rulings are set out below.

I.      **Background**

Paulita Coronado, a dancer at the Gold Cup and Cover Girls Clubs, sued each club and their

owners and managers, Ali and Hassan Davari, under 29 U.S.C. §§ 201–219.  The two cases were

consolidated.  (Docket Entry Nos. 1, 24, 31).  Two months later, in September 2014, Coronado

added two additional clubs, the Davaris owned, Treasures and Centerfolds, as defendants.  (Docket

Entry No. 91).   Coronado alleged that the defendants misclassified her and other dancers as

independent contractors rather than as employees and failed to pay federally required wages for the

hours they worked.  The complaint sought collective-action certification of the following class:

> [C]urrent and former exotic entertainers who worked at Gold Cup at any time
> during the three years before this Complaint was filed up to the present.

(Docket Entry No. 1).  The parties agreed to conditional certification and issuance of notice as to

the FLSA misclassification and underpayment claims.  (Docket Entry No. 27).

Beginning on April 3, 2013, the defendants required dancers to sign a Dancer License and

Access Agreement (the "Agreement").  (Docket Entry No. 112, Ex. A).  Thirty-three of the plaintiffs

signed this Agreement after the lawsuit was filed.[1]  (Docket Entry No. 112, Exs. C-K, M-JJ).  The

Agreement contains the following arbitration provisions:

> 11.  THE DANCER SHALL INDEMNIFY, HOLD HARMLESS AND PAY FOR
> COVER GIRLS'S DEFENSE FROM AND AGAINST ANY AND ALL CLAIMS,
> LOSSES OR LIABILITY, INCLUDING ATTORNEYS' FEES, ARISING FROM
> OR RELATED TO THE DANCER'S RELATIONSHIP WITH COVER GIRLS,
> INCLUDING LIABILITY ARISING FROM COVER GIRLS'S OWN
> NEGLIGENCE

---

[1]  The 34 plaintiffs are: Esmeralda Garza; Courtnay Falcon; Jasmine Wells; Leslie Janell Dickinson; Robin Sandwick; Vanessa Argueta; Brittany Brianne Brown; Unique Johnson; Sabrina G. Ross; Ranesha S. Newton; Veronica Arredondo; Amber Kolenda; Tabbitha Martin; Hollie Powell; Jennifer Beals; Sarah Storm; Joy Murphy; Vanessa Gross; Unique Roden; Ebonee Williams; Mary Jane Trueman; Krystal Murphy; Stephanie Nguyen; Cami Jo Nelson; Amber Poyer; Nichole Jones; Crystal Phears; Lela Jordan; Slonne Blanco; Kaila Childress; Jasmine Malone; and Amber Zia Uddin.  (Docket Entry No. 112, at 2-4).

12.  THIS DANCER LICENSE AND ACCESS AGREEMENT CONTAINS A BINDING ARBITRATION PROVISION AND CLASS ACTION WAIVER WHICH AFFECTS YOUR LEGAL RIGHTS.  THESE CONDITIONS ARE CONDITIONS TO THE AGREEMENT, WHICH WILL NOT BE REACHED ABSENT YOUR CONSENT AND AGREEMENT TO BOTH PROVISIONS.

13.  THE PARTIES, D. N.W. HOUSTON D/B/A GOLD CUP AND THE DANCER WHOSE NAME IS SET FORTH BELOW, AGREE AND COVENANT THAT ANY AND ALL DISPUTES, CLAIMS, OR CONTROVERSIES ARISING OUT OF OR RELATING TO THIS AGREEMENT AND ANY MATTER RELATED TO ALLEGED EMPLOYMENT, INDEPENDENT CONTRACTOR, TERMS OF CONDITIONS OF SERVICE OR EMPLOYMENT, OR COMPLIANCE WITH THE FAIR LABOR STANDARDS ACT (THE "FLSA") SHALL BE SUBMITTED TO THE AMERICAN ARBITRATION ASSOCIATION (THE "AAA") OR ITS SUCCESSOR, FOR MEDIATION, AND IF THE MATTER IS NOT RESOLVED THROUGH MEDIATION, THEN IT SHALL BE SUBMITTED TO THE AAA OR ITS SUCCESSOR, FOR FINAL AND BINDING ARBITRATION PURSUANT TO THE ARBITRATION CLAUSE SET FORTH ABOVE . . . EITHER PARTY MAY INITIATE ARBITRATION AT ANY TIME FOLLOWING THE INITIAL MEDIATION SESSION OR 45 DAYS AFTER THE DATE OF FILING THE WRITTEN REQUEST FOR MEDIATION, WHICHEVER OCCURS FIRST . . .

14.  ARBITRATION SHALL PROCEED SOLELY ON AN INDIVIDUAL BASIS WITHOUT THE RIGHT FOR ANY CLAIMS TO BE ARBITRATED ON A COLLECTIVE OR CLASS ACTION BASIS OR ON BASES INVOLVING CLAIMS BROUGHT IN A PURPORTED REPRESENTATIVE CAPACITY ON BEHALF OF OTHERS.  THE ARBITRATOR'S AUTHORITY TO RESOLVE AND MAKE WRITTEN AWARDS IS LIMITED TO CLAIMS BETWEEN YOU AND W.L. YORK, INC. D/B/A COVER GIRLS ALONE. CLAIMS MAY NOT BE JOINED OR CONSOLIDATED UNLESS AGREED TO IN WRITING BY ALL PARTIES.  NO ARBITRATION AWARD OR DECISION WILL HAVE ANY PRECLUSIVE EFFECT AS TO ISSUES OR CLAIMS IN ANY DISPUTE WITH ANYONE WHO IS NOT A NAMED PARTY TO THE ARBITRATION.  THE DANCER WHOSE NAME APPEARS BELOW KNOWINGLY AND AFFIRMATIVELY WAIVES ANY RIGHT TO PARTICIPATE IN ANY COLLECTIVE ACTION OR CLASS ACTION COMMENCED OR TO BE COMMENCED IN ANY COURT OF LAW CONCERNING ANY CLAIMS RELATED TO THIS AGREEMENT, TO HER RELATIONSHIP TO COVER GIRLS AS A LICENSEE, OR OTHERWISE AS TO HER LEGAL RELATIONSHIP WITH COVER GIRLS.

(Docket Entry No. 112, Ex. A).

After May 14, 2014, the defendants required all dancers to sign a New Dancer License and Access Agreement (the "New Agreement").  (Docket Entry No. 112, Ex. B).  Only one of the plaintiffs signed this New Agreement.[2] (Docket Entry No. 112, Ex. L).  The New Agreement contains the following provisions:

> 12.  THE DANCER SHALL INDEMNIFY, HOLD HARMLESS AND PAY FOR CENTERFOLDS' DEFENSE FROM AND AGAINST ANY AND ALL CLAIMS, LOSSES OR LIABILITY, INCLUDING ATTORNEYS' FEES, ARISING FROM OR RELATING TO THIS AGREEMENT OR THE DANCER'S RELATIONSHIP WITH CENTERFOLDS, INCLUDING LIABILITY ARISING FROM CENTERFOLDS' OWN NEGLIGENCE.

> 13.  ARBITRATION POLICY.

> (A)  THE PARTIES AGREE THAT ANY AND ALL COVERED DISPUTES, CLAIMS AND CONTROVERSIES ARISING OUT OF OR RELATING TO THIS AGREEMENT AND/OR ANY MATTER RELATED TO ALLEGED EMPLOYMENT, ALLEGED TERMS OR CONDITIONS OF EMPLOYMENT, OR ANY ALLEGED RELATIONSHIP OTHER THAN THAT OF A LICENSEE THAT THE DANCER MAY HAVE AGAINST CENTERFOLDS, ITS OWNERS, DIRECTORS, OFFICERS, MANAGERS, EMPLOYEES, OR AGENTS (HEREINAFTER COLLECTIVELY REFERRED TO AS "CENTERFOLDS") OR THAT CENTERFOLDS MAY HAVE AGAINST THE DANCER SHALL BE SUBMITTED EXCLUSIVELY TO AND DETERMINED EXCLUSIVELY BY BINDING ARBITRATION UNDER THE FEDERAL ARBITRATION ACT, 9 U.S.C. § 1 ET SEQ. ("FAA") . . .

> (B)  "COVERED DISPUTES, CLAIMS, AND CONTROVERSIES" INCLUDE, BUT ARE NOT LIMITED TO, ANY AND ALL DISPUTES, CLAIMS AND CONTROVERSIES THAT AROSE BEFORE AND/OR AFTER THIS ARBITRATION POLICY WENT INTO EFFECT, ARISING UNDER THE AGE DISCRIMINATION IN EMPLOYMENT ACT ("ADEA"), TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 ("TITLE VII"), THE AMERICANS WITH DISABILITIES ACT ("ADA"), THE FAMILY AND MEDICAL LEAVE ACT ("FMLA"), THE FAIR LABOR STANDARDS ACT ("FLSA"), 42 U.S.C. § 1981, INCLUDING AMENDMENTS TO ALL THE FOREGOING STATUTES . . .

---

[2]  That plaintiff is Crystal Gross.  (Docket Entry No. 112, at 7 & Ex. L).

(C) ANY AND ALL COVERED DISPUTES, CLAIMS, AND CONTROVERSIES SHALL BE SUBMITTED TO THE AMERICAN ARBITRATION FOR ASSOCIATION (THE "AAA"), OR ITS SUCCESSOR, INITIALLY FOR MEDIATION, THEN IT SHALL BE SUBMITTED TO THE AAA, OR ITS SUCCESSOR, FOR FINAL AND BINDING ARBITRATION . . .

(E) EITHER PARTY MAY INITIATE ARBITRATION WITH RESPECT TO THE MATTERS SUBMITTED TO MEDIATION BY FILING A WRITTEN DEMAND FOR ARBITRATION AT ANY TIME FOLLOWING THE INITIAL MEDIATION SESSION OR 45 DAYS AFTER THE DATE OF FILING THE WRITTEN REQUEST FOR MEDIATION, WHICHEVER OCCURS FIRST . . .

. . .

(I) THE PROVISIONS OF THIS ARBITRATION POLICY MAY BE ENFORCED BY ANY COURT OF COMPETENT JURISDICTION. IF ANY TERM OR PROVISION, OR PORTION OF THIS ARBITRATION POLICY IS DECLARED VOID OR UNENFORCEABLE, IT SHALL BE SEVERED AND THE REMAINDER OF THIS ARBITRATION POLICY SHALL BE ENFORCEABLE. THIS ARBITRATION POLICY MAY BE MODIFIED, IN WHOLE OR IN PART, OR TERMINATED BY CENTERFOLDS ONLY AFTER CENTERFOLDS PROVIDES AT LEAST 30 DAYS WRITTEN NOTICE OF SUCH MODIFICATION OR TERMINATION TO THE DANCER, AND ONLY WITH RESPECT TO CLAIMS SUBMITTED UNDER THE POLICY WHICH ARE RECEIVED AFTER THE EFFECTIVE DATE OF SUCH MODIFICATION OR TERMINATION.

14. WAIVER OF CLASS OR COLLECTIVE CLAIMS.

ARBITRATION SHALL PROCEED SOLELY ON AN INDIVIDUAL BASIS WITHOUT THE RIGHT FOR ANY COVERED DISPUTES, CLAIMS AND CONTROVERSIES TO BE ARBITRATED ON A COLLECTIVE OR CLASS ACTION BASIS OR ON BASES INVOLVING CLAIMS BROUGHT IN A PURPORTED REPRESENTATIVE CAPACITY ON BEHALF OF OTHERS . . .

15. CENTERFOLDS AND THE DANCER AGREE THAT IF, UPON ANY RULING OR DECISION OF AN ARBITRATOR, COURT OR OTHER TRIBUNAL WITH JURISDICTION OVER THE MATTER THAT THE RELATIONSHIP BETWEEN CENTERFOLDS AND THE DANCER IS ONE OF EMPLOYER AND EMPLOYEE, THE DANCER SHALL SURRENDER, REIMBURSE AND PAY TO CENTERFOLDS ALL MONEY RECEIVED BY THE DANCER AT ANY TIME SHE PERFORMED ON THE PREMISES OF CENTERFOLDS. . . .

(Docket Entry No. 112, Ex. B).

The defendants moved to dismiss the 34 plaintiffs' FLSA claims and compel arbitration under 9 U.S.C. § 4. (Docket Entry No. 112). The plaintiffs responded, and the defendants replied. (Docket Entry No. 121, 126).

## II.     The Legal Standard

The parties agree that the arbitration Agreements are subject to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq*. The defendants moved to compel arbitration under § 4 of the FAA, which provides that, when a party petitions the court to compel arbitration under a written arbitration agreement, "[t]he court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. The FAA "leaves no place" for the court to exercise discretion. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). The court must order the parties to arbitrate issues covered by a valid arbitration agreement. *Id.*

A court first determines whether the parties agreed to arbitrate the dispute, which in turn requires two separate determinations: "'(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement.'" *Tittle v. Enron Corp.*, 463 F.3d 410, 418 (5th Cir. 2006) (citation omitted). The court applies state law to decide contract validity. *First Options v. Kaplan*, 514 U.S. 938, 944 (1995). "[A]s a matter of federal law, arbitration agreements and clauses are to be enforced *unless* they are invalid under principles of state law that govern all contracts." *Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159, 166 (5th Cir. 2004) (emphasis in original) (interpreting 9

U.S.C. § 2).  State-law contract defenses, including fraud, duress, unconscionability, or waiver, may invalidate arbitration agreements.  *See Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996); *see also Miller Brewing Co. v. Fort Worth Distrib. Co., Inc.*, 781 F.2d 494, 497 (5th Cir.1986) ("'The right to arbitration, like any other contractual right, can be waived.'") (quoting *Cornell & Co. v. Barber & Ross Co.*, 360 F.2d 512, 513 (D.C. Cir. 1966) (per curiam))).  Applying these defenses to invalidate arbitration clauses contravenes § 2 of the FAA if the defenses "apply only to arbitration or [ ] derive their meaning from the fact that an agreement to arbitrate is at issue." *AT & T Mobility LLC v. Concepcion*, ——U.S. ——, ——, 131 S. Ct. 1740, 1746 (2011); *see also Marmet Health Care*, 132 S.Ct. at 1203–04.

If there is a valid agreement to arbitrate, the court then applies federal law to decide whether the parties' dispute is within the scope of that agreement.  The FAA "expresses a strong national policy favoring arbitration of disputes, and all doubts concerning the arbitrability of claims should be resolved in favor of arbitration."  *Wash. Mut. Fin. Grp., L.L.C. v. Bailey*, 364 F.3d 260, 263 (5th Cir. 2004) (quotations omitted); *see also EEOC v. Waffle House, Inc.*, 534, U.S. 279, 294 (2002). The duty to arbitrate is one of contract; a court cannot compel parties to arbitrate issues they have not agreed to submit.  *See Neal v. Hardee's Food Sys., Inc.*, 918 F.2d 34, 37 (5th Cir. 1990) ("A party cannot be compelled to submit a dispute to arbitration unless there has been a contractual agreement to do so.")).

The Supreme Court has recognized that "the existence of large arbitration costs could preclude a litigant . . . from effectively vindicating her federal statutory rights in the arbitral forum." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000).  A party seeking to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive "bears the

burden of showing the likelihood of incurring such costs." *Id.* at 92.  In *Green Tree*, the Supreme

Court concluded that the plaintiff failed to meet this burden despite her assertion that "arbitration

costs are high and that she did not have the resources to arbitrate." *Id.* at 91 n.6.  Although the

plaintiff in *Green Tree* cited the arbitration tribunal's fee schedules, as well as opinions indicating

the fees in those cases, she "failed to make any factual showing that the American Arbitration

Association would conduct the arbitration, or that, if it did, she would be charged the filing fee or

arbitrator's fee that she identified." *Id.*  Nor did she show that the party invoking arbitration would

not waive the fees.  The Supreme Court concluded that "[t]hese unsupported statements provide no

basis on which to ascertain the actual costs and fees to which she would be subject in arbitration,"

and that "[n]one of this information affords a sufficient basis for concluding that [the claimant]

would in fact have incurred substantial costs in the event her claim went to arbitration." *Id*.

### III.    Analysis

#### A.    Whether the Agreements are Illusory

The plaintiffs argue that the Agreements and the New Agreement are unenforceable for lack

of consideration and that they cannot be compelled to arbitrate.  The threshold issue is whether this

issue is one for this court or for the arbitrator to decide.  A series of Supreme Court decisions

addresses which "gateway" challenges to arbitration courts must decide and which challenges are

for the arbitrator.  A challenge to the validity (rather than the existence) of the parties' contract as

a whole, as opposed to a challenge to an arbitration clause contained in the contract, is for the

arbitrator to decide. *See Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*, 388 U.S. 395,

406 (1967) (the arbitrator, not the court, is to decide a claim that the agreement was fraudulently

induced); *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445–46 (2006) (a challenge to

an agreement containing an arbitration clause, as opposed to a challenge to the arbitration clause itself, is for the arbitrator to decide).  "Only if the arbitration clause can be attacked on an independent basis can the court decide the dispute; otherwise, general attacks on the agreement are for the arbitrator."  *Will-Drill Res, Inc. v. Samson Res. Co.*, 352 F.3d 211, 218 (5th Cir. 2003).

The plaintiffs argue that the arbitration clauses are invalid because the Agreement and the New Agreement as a whole lack consideration.  (Docket Entry No. 121).  The plaintiffs rely on the provision allowing the defendants and the dancer to terminate at any time and for any reason. (Docket Entry No. 112, Ex. A, ¶7).  The argument is that this makes the Agreement and New Agreement  illusory.

This is a challenge to the validity of the Agreement or New Agreement itself, not specifically to the arbitration clause.  "[W]here parties have formed an agreement which contains an arbitration clause, any attempt to dissolve that agreement by having the entire agreement declared voidable or void is for the arbitrator."  *Will-Drill Res, Inc.*, 353 F.3d at 218.  This argument is for the arbitrator, not the court, to decide.

If the plaintiffs are arguing that the arbitration clause itself is illusory, the argument is unpersuasive.  "Under Texas law, an arbitration clause is illusory if one party can 'avoid its promise to arbitrate by amending the provision or terminating it altogether.'"  *Carey v. 24 Hour Fitness USA, Inc.,* 669 F.3d 202, 205 (5th Cir. 2002) (citing *In re 24R, Inc.*, 324 S.W.3d 564, 567 (Tex. 2010)). An arbitration clause is illusory if one party "has the power to make changes to its arbitration policy that have retroactive effect, meaning changes to the policy would strip the right of arbitration from an employee who has already attempted to invoke it."  *Id*.

The plaintiffs argue that the Agreements and New Agreement, and the arbitration clauses within them, are illusory because there is no "survival clause." (Docket Entry No. 121). A survival or savings clause prevents a unilateral change from being retroactive. *Sharpe v. AmeriPlan Corp.,* 769 F.3d 909, 918 (5th Cir. 2014). But the lack of a survival or savings clause does not make the Agreement or New Agreement, or the arbitration clauses included in them, illusory. The Agreement and New Agreement give both the defendants and the dancer the right to terminate at any time and for any reason, but "[a]n arbitration clause contained within a contract survives the termination or repudiation of the contract as a whole." *Cleveland Construction, Inc. v. Levco Construction, Inc.*, 359 S.W.3d 843, 854 (Tex. App.-Houston 2012). The arbitration clauses in the Agreement and New Agreement contain bilateral promises to arbitrate. (Docket Entry No. 112, Exs. A, B). Bilateral promises are valid considerations for arbitration clauses. *See Sharpe*, 769 F.3d at 918 (citing *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 676 (Tex. 2006). The arbitration clauses are not invalid for lack of consideration.

### B.     Whether Ali and Hassan Davari May Compel Arbitration

The plaintiffs argue that they cannot be compelled to arbitrate their claims against Ali Davari and Hassan Davari because the clubs they own signed the Agreements and the New Agreement that the dancers signed. Ali and Hassan Davaris are nonsignatories. (Docket Entry No. 121).

A nonsignatory may enforce an arbitration agreement against a signatory under certain circumstances. *See, e.g., Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009) "'[T]raditional principles' of state law allow a contract to be enforced by or against non-parties to the contract through 'assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party

10

beneficiary theories, waiver and estoppel.'" (quoting 21 R. Lord, WILLISTON ON CONTRACTS §
57:19, p. 183 (4th ed. 2001)).

The Davaris rely on concerted-misconduct estoppel, which federal courts have held may
allow nonsignatory parties to compel arbitration when the signatory plaintiffs' allegations of
wrongdoing against the nonsignatory parties are intertwined with the allegations against signatory
defendants.  In *Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 526 (5th Cir. 2000), for
example, the Fifth Circuit allowed a nonsignatory to the arbitration agreement to compel arbitration
under concerted-misconduct estoppel.  In *Crawford Professional Drugs, Inc. v. CVS Caremark
Corp.*, 748 F.3d 249 (5th Cir. 2014), however, the Fifth Circuit made clear that "prior decisions
allowing nonsignatories to compel arbitration based on federal common law, rather than state
contract law, such as *Grigson*, have been modified to conform with [the Supreme Court's decision
in] *Arthur Andersen*," which "instructs that a non-signatory to an arbitration agreement may compel
a signatory to that agreement to arbitrate based on . . . equitable estoppel if the relevant state contract
law so permits."  *Id.* at 261-62 (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624 (2009)).

Texas has not adopted an equitable estoppel theory based solely on substantially
interdependent and concerted misconduct. *In re Merrill Lynch Trust Co. FSB*, 235 S.W.3d 185, 191-
95 (Tex. 2007).  Because Texas law does not recognize concerted-misconduct estoppel as a basis
for compelling a party to arbitrate against a nonsignatory, the Davaris may not rely on this theory
to compel arbitration.  *See id.* at 195 (finding "nothing in Texas contract law . . . that would require
the plaintiffs to arbitrate with Merrill Lynch's [nonsignatory] affiliates"); *see also Inland Sea, Inc.
v. Castro*, 420 S.W.3d 55, 59 (Tex. App.–El Paso 2012, pet. denied) (the nonsignatory defendant
could not rely on concerted-misconduct estoppel to compel arbitration against a signatory plaintiff

11

because the Texas Supreme Court has not "adopted the type of concerted misconduct estoppel relied upon by [the defendant]" (citing *In re Merrill Lynch*, 235 S.W.3d at 191-95)).

At the same time, "parties to an arbitration agreement may not evade arbitration through artful pleading, such as by naming individual agents of the party to the arbitration clause and suing them in their individual capacity." Texas law is similar. *See In re Merrill Lynch*, 235 S.W.3d at 188 (quotations omitted). Agreements would be "rendered illusory on one side . . ."when the choice between suing the corporation or suing the workers determines whether an arbitration agreement is binding." *Id*. at 188-89; *see also In re Vesta Ins. Group, Inc.*, 192 S.W.3d 759, 762 (Tex. 2006) ("When contracting parties agree to arbitrate all disputes . . . they generally intend to include disputes about their agents' actions because 'as a general rule, the actions of a corporate agent on behalf of the corporation are deemed the corporation's acts.' If arbitration clauses only apply to contractual signatories, then this intent can only be accomplished by having every officer and agent (and every affiliate and its officers and agents) either sign the contract or be listed as a third-party beneficiary. This would not place such clauses on an equal footing with all other parts of a corporate contract.").

In *In re Merrill Lynch*, the plaintiffs, who had signed agreements to arbitrate claims against Merrill Lynch relating to their brokerage accounts, sued a Merrill Lynch broker who did not sign the agreements. 235 S.W.3d 185 (Tex. 2007). The Texas Supreme Court granted the broker's motion to compel arbitration because the plaintiffs' claims were in substance claims against the signatory brokerage firm. *Id*. at 190.

Ali and Hassan Davari are the owners and managers of Gold Cup, Cover Girls Houston, Treasures, and Centerfolds. (Docket Entry No. 91). The plaintiffs' claims against Ali and Hassan

Davari are in substance claims against the clubs that signed the Agreements and New Agreement containing the arbitration clauses. (Docket Entry No. 91). The plaintiffs cannot avoid arbitration because it is invoked by these defendants.

### C.   Whether the Arbitration Agreements Are Unenforceable

In applying state contract law to determine whether an agreement to arbitrate is valid and enforceable, a court considers only "issues relating to the making and performance of the agreement to arbitrate." *See Prima Paint Corp.*, 388 U.S. at 403–04. The court may evaluate the unconscionability of an arbitration clause but not the unconscionability of the contract as a whole. *See Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 430 (5th Cir. 2004).

"A contract is unenforceable if, 'given the parties' general commercial background and the commercial needs of the particular trade or case, the clause involved is so one-sided that it is unconscionable under the circumstances existing when the parties made the contract." *In re Poly-Am., L.P.*, 262 S.W.3d 337, 348 (Tex. 2008) (quoting *In re First Merit Bank*, 52 S.W.3d 749, 752 (Tex. 2001)).

Under Texas law, unconscionability includes two aspects: (1) procedural unconscionability, which refers to the circumstances surrounding the adoption of the arbitration provision; and (2) substantive unconscionability, which refers to the fairness of the arbitration provision itself. *In re Halliburton Co.*, 80 S.W.3d 566, 571 (Tex. 2002). The party seeking to invalidate an arbitration agreement has the burden of proving unconscionability. *Id*. at 572.

"An arbitration agreement covering statutory claims is valid so long as the arbitration agreement does not waive the substantive rights and remedies the statute affords and the arbitration procedures are fair, such that the employee may 'effectively vindicate his statutory rights.'" *In re*

13

*Poly-Am*, 262 S.W.3d at 349 (quoting *In re Halliburton*, 80 S.W.3d at 572).  Arbitration provisions relating to federal statutory claims are not enforceable "when a party is forced to 'forgo the substantive rights afforded by the statute,' as opposed to merely 'submit[ting] to resolution in an arbitral, rather than a judicial, forum.'" *Id.* (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985).

"In applying the unconscionability standard, the crucial inquiry is whether the arbitral forum in a particular case is an adequate and accessible substitute to litigation, a forum where the litigant can effectively vindicate his or her rights." *In re Olshan Foundation Repair Co., LLC*, 328 S.W.3d 883, 894 (Tex. 2010).  "In the absence of unusual animus between the parties or external motives, plaintiffs continue to pursue claims when the expected benefits of the lawsuit outweigh the total cost of bringing it." *Id.*  "If the total cost of arbitration is comparable to the total cost of litigation, the arbitral forum is equally accessible." *Id.*  "Thus, a comparison of the total costs of the two forums is the most important factor in determining whether the arbitral forum is an adequate and accessible substitute to litigation." *Id.* at 894-95.  Other factors include "the actual cost of arbitration compared to the total amount of damages the claimant is seeking and the claimant's overall ability to pay the arbitration fees and costs. These factors may also show arbitration to be an inadequate and inaccessible forum for the particular claimants to vindicate their rights. However, these considerations are less relevant if litigation costs more than arbitration." *Id.* at 895.

"The party opposing arbitration must show the likelihood of incurring such costs in her particular case." *In re Olshan*, 328 S.W.3d at 895.  "Thus, for evidence to be sufficient, it must show that the plaintiffs are likely to be charged excessive arbitration fees." *Id.*  "[P]arties must at

14

least provide evidence of the likely cost of their particular arbitration, through invoices, expert testimony, reliable cost estimates, or other comparable evidence." *Id.*

The plaintiffs argue that the arbitration clauses in the Agreements and the New Agreement are substantively unconscionable for three reasons: (1) both have a 45-day delay before arbitration can be initiated, which truncates the FLSA's statute of limitations; (2) both allow the clubs to recover attorneys' fees from a dancer who does not prevail in the arbitration; and (3) the New Agreement requires a dancer who prevails in the arbitration to pay the club the tips she has received. (Docket Entry No. 121).

### 1.     The 45-day Mediation Requirement

The plaintiffs argue that requiring them to mediate before demanding arbitration is unconscionable. (Docket Entry No. 121). They also argue that requiring them to wait 45 days after filing a written request for mediation or undergoing a mediation session violates their FLSA rights because damages accrue on a daily or weekly basis and the 45-day rule shrinks the limitations period to recover those damages. (Docket Entry No. 121).

Courts have regularly rejected  challenges to the pre-arbitration grievance procedures that can be completed in a reasonable time.  *See Quilloin v. Tenet HealthSystem Philadelphia, Inc.*, 673 F.3d 221, 233–35 (3d Cir. 2012) (pre-filing requirements that required the defendant to act within an unspecified amount of time and allowed the plaintiffs to move forward with proceedings within a reasonable time were not "clearly unreasonable and unduly favorable" to the defendant); *Allen v. Apollo Grp., Inc.*, 2004 WL 3119918, at *9 (S.D. Tex. Nov. 9, 2004) (three-step grievance procedure that allowed employer 30 days to respond at step two, 30 days to respond at step three, and an

unspecified time for the defendant's chief executive officer to make a final recommendation, did

"not improperly burden plaintiffs' ability to secure timely arbitration").

The mediation requirements and procedure are not unconscionable and are not a basis to

avoid arbitration.

### 2. Attorneys' Fees and Costs

### a. Unconscionability

The plaintiffs argue that the arbitration clauses in both the Agreement and the New

Agreement are unconscionable because they result in significantly greater costs than the plaintiffs

would incur in litigation. The plaintiffs point to the fee-shifting provisions that allow the clubs to

recover their attorneys' fees even if they lose in arbitration. (Docket Entry No. 121, at 14).[3] The

defendants respond that because theses provisions are in other parts of the contract, not the

arbitration clause, the arbitrator, not this court, must determine whether these provisions make

arbitration unconscionable. Although a fee-shifting contract provision is not part of an arbitration

clauses, the court may consider that provision in deciding if the clause is unconscionable. *See*

*Rent–A–Center, West Inc. v. Jackson*, 561 U.S. 63, 73-74 (2010) (contract provisions outside the

---

[3] The plaintiffs also point to the AAA arbitration costs schedule, which they contend forces them to incur more costs than in federal court. "[E]xcessive costs imposed by an arbitration agreement render a contract unconscionable if the costs prevent a litigant from effectively vindicating his or her rights in the arbitral forum." *In re Olshan*, 328 S.W.3d at 893 (citing *Green Tree*, 531 U.S. at 90). "It is not sufficient for the party [opposing arbitration on unconscionability grounds] to show that it is at risk of incurring excessive fees and costs." *Venture Cotton Cooperative v. Freeman*, — S.W.3d —, 2015 WL 1967251, at *3 (Tex. App.–Eastland, Apr. 30, 2015). "The complaining party must present some evidence that [it] will likely incur arbitration costs in such an amount as to deter enforcement of statutory rights in the arbitral forum." *Id.* (quotations omitted); *see also In re U.S. Home Corp.*, 236 S.W.3d 761, 764 (Tex. 2007)). "Such evidence may be shown "through invoices, expert testimony, reliable cost estimates, or other comparable evidence." *Olshan*, 328 S.W.3d at 895. Because the plaintiffs in this case have not submitted evidence besides the AAA schedules, they have not met their burden to find the arbitration agreements unenforceable on this basis. *See Long v. BDP Int'l Inc.*, 919 F. Supp. 2d 832, 847 (S.D. Tex. Jan. 22, 2013) (rejecting similar argument based on similar evidence).

16

arbitration clause may be considered in determining whether an arbitration agreement is unconscionable if applying them to the arbitration clause make it unconscionable).

The Agreements include  a  provision stating that the dancers "shall indemnify, hold harmless and pay for [the defendant club's] defense from and against any and all claims, losses or liability, including attorneys' fees, arising from or related to the dancer's relationship with" the defendant clubs.  (Docket Entry No. 112, Ex. A, ¶ 11 (capitalization removed)).  The New Agreement has a similar provision, stating that "the dancer shall indemnify, hold harmless and pay for [the defendant club's] defense from and against any and all claims, losses or liability, including attorneys' fees, arising from or relating to this agreement or the dancer's relationship with" the defendant club.  (Docket Entry No. 112, Ex. B, ¶ 12 (capitalization removed)).  The plaintiffs argue that these fee-shifting provisions undermine the FLSA, which allows prevailing plaintiffs, but not defendants, to recover their attorneys' fees.  (*Id.*).

Arbitration provisions relating to federal statutory claims are not enforceable "when a party is forced to 'forgo the substantive rights afforded by the statute,' as opposed to merely 'submit[ting] to resolution in an arbitral, rather than a judicial, forum.'"  *In re Poly-Am*, 262 S.W.3d at 349 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)).  Attorneys' fees are mandatory in FLSA actions for plaintiffs who prevail on their claims for unpaid minimum wage or overtime compensation.  The FLSA states that courts "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."  *See* 29 U.S.C. § 216(b).  "The FLSA's fee-shifting provision refers only to a prevailing plaintiff . . . and says nothing of a prevailing defendant."  *Mach v. Will Cnty. Sheriff*, 580 F.3d 495, 501 (7th Cir. 2009).  Instead, the "FLSA entitles a prevailing defendant

17

to attorneys' fees only where the district court finds that the plaintiff litigated in bad faith." *Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1437 (11th Cir. 1998).

The fee-shifting provision allows the defendant clubs to recover attorneys' fees whether they win or lose in arbitration. This violates the FLSA. The case law makes clear that fee-shifting provisions in arbitration agreements prevent litigants from vindicating their FLSA causes of action. *See Sanchez v. Nitro-Lift Techs., LLC*, 762 F.3d 1139, 1148 (10th Cir. 2014) (fee-shifting provisions would be invalid under prevailing Tenth Circuit and Supreme Court law); *Quillion*, 673 F.3d at 230–31 ("Provisions requiring parties to be responsible for their own expenses, including attorneys' fees, are generally unconscionable because restrictions on attorneys' fees conflict with federal statutes providing fee-shifting as a remedy."); *Nino v. Jewelry Exchange, Inc.*, 609 F.3d 191, 203 (3d Cir. 2010) (arbitration agreement's "restriction on the arbitrator's ability to award attorney's fees, costs, and expenses [to the plaintiffs was] substantively unconscionable" because it "undermine[d] the legislative intent behind fee-shifting statutes like Title VII"); *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 669 (6th Cir. 2003) (en banc) (district court erred in "holding that the cost-splitting provision in the . . . arbitration agreement was enforceable"); *Silva v. Miller*, 307 F. App'x 349, 351 (11th Cir. 2009) (the FLSA "provides for reasonable attorney's fees [and] the parties cannot contract in derogation of FLSA's provisions"); *see also Lott v. Buccaneer Satellite*, Civ. Action No. 9:11-cv-173, Slip Op. at 7 (E.D. Tex. Aug. 10, 2012) (provision shifting all costs of arbitration and prevailing party fees to loser unconscionable); *Nesbitt v. FCNH, Inc.*, 74 F. Supp. 3d 1366, 1374-75 (D. Colo. 2014) (finding similar fee-shifting provision unenforceable).

Because the Agreement and the New Agreement have provisions allowing the defendant clubs to recoup attorneys' fees from the plaintiffs even if they prevail on their FLSA claims, the arbitration clauses are unenforceable unless those provisions are severable.

### b.      Severability

The defendants contend the fee-shifting provisions in the agreements are severable. Plaintiffs contend that the provisions cannot be severed and make the arbitration clauses unenforceable.  Under Texas law, "[a]n illegal or unconscionable provision of a contract may generally be severed so long as it does not constitute the essential purpose of the agreement." *Venture Cotton Co-op v. Freeman*, 435 S.W.3d 222 (Tex. 2014) (quoting *Poly–America*, 262 S.W.3d at 360).  "In determining an agreement's essential purpose, the issue is 'whether or not parties would have entered into the agreement absent the unenforceable provisions.'"  *Id.* (quoting *Poly-America*, 262 S.W.3d at 360).

The presence of a severability clause sheds light on the agreement's "essential purpose." *See John R. Ray & Sons, Inc. v. Stroman*, 923 S.W.2d 80, 87 (Tex. App.-Houston [14th Dist] 1996, writ denied) ("[T]he purpose of a severability clause is to allow a contract to stand when a portion has been held to be invalid.  However, when the severed portion is integral to the entire contract, a severability clause, standing alone, cannot save the contract.").   In *Poly-America*, for example, the Texas Supreme Court found that unconscionable "fee-splitting and remedies-limitation provisions" did not make the arbitration clause unenforceable in part because the parties contract included a severability clause.  262 S.W.3d at 359–61.  The court concluded that "the intent of the parties, as expressed by the severability clause, is that unconscionable provisions be excised where possible." *Id.* at 361.

19

The New Agreement signed by one plaintiff provides that "if any term or provision, or portion of this arbitration policy is declared void or unenforceable, it shall be severed and the remainder of this arbitration policy shall be enforceable." (Docket Entry No. 112, Ex. B, ¶ 14(I)). The parties intended the arbitration clause to remain valid when, as here, a part of the agreement is unenforceable but not integral, to the agreement, it may be severed. *See Poly-America*, 262 S.W.3d at 359–61.

The Agreements 33 of the plaintiffs signed is a different matter. Unlike the New Agreement, the Agreements do not include a severability clause. (*See generally* Docket Entry No. 112, Ex. A).[4] Courts refuse to sever unconscionable provisions when doing so would require rewriting the contract based on guessing at the parties' intent. *See, e.g.*, *Nesbitt*, 74 F. Supp. 3d at 1375 (refusing to sever unconscionable fee-shifting provision "[b]ecause there [was] no savings clause and because the agreement itself is unambiguous its provisions cannot be stricken, rendering the entire Arbitration Agreement unenforceable"); *Pérez v. Hospitality Ventures–Denver LLC*, 245 F. Supp. 2d 1172, 1173–75 (D. Colo. 2003) (declining to sever unconscionable fee-splitting provision without a severance clause); *see also Gourley v. Yellow Transp., LLC*, 178 F.Supp.2d 1196, 1203–05 (D. Colo. 2001) (refusing to entertain defendant's offer to waive invalid fee-shifting provision in an arbitration

---

[4] *Venture Cotton* is not to the contrary. In *Venture Cotton*, the Texas Supreme Court considered whether an arbitration agreement's provision that illegally eliminated the plaintiffs "statutory right to attorney's fees and other remedies under the Texas Consumer Protection—Deceptive Trade Practices Act" was severable. The agreement contained a severability clause but the court of appeals concluded that the defendant had "waived its right to enforce the remainder of the arbitration clause by not asking the trial court to sever the offending limitation of statutory remedies." 435 S.W.3d at 230. The Texas Supreme Court refused to find waiver on the defendant's interlocutory appeal because "[c]onservation of time and resources recommend that we consider the issue now because nothing prevents Venture from urging severance in the trial court and, if denied, from renewing its complaint in yet another interlocutory appeal." *Id.* Only after making that waiver determination did the court find that the fee-eliminating provision was severable. In doing so, the court concluded that the "agreement's essential purpose . . . was to provide for a speedy and efficient resolution of disputes to ensure timely performance under the contract" and its "collateral effect on statutory rights and remedies appears to be a peripheral concern . . . ." *See id.* at 230–31.

agreement with no severance clause).  The fee provisions in the Agreements are unconscionable and cannot be severed.

### 3.    The New Agreement's Provision Requiring Prevailing Dancers to Return Tips

The plaintiffs also contend that the arbitration clause in the New Agreement is unconscionable because it requires dancers to reimburse the defendant clubs for the tips the dancers received during the time they worked there.  (Docket Entry No. 121); (Docket Entry No. 112, Ex. B, ¶ 15).  The New Agreement states that if a dancer is found to be an employee rather than an independent contractor, the dancer must return "SURRENDER, REIMBURSE AND PAY TO CENTERFOLDS ALL MONEY RECEIVED BY THE DANCER AT ANY TIME SHE PERFORMED ON THE PREMISES OF [THE CLUB]."  If the dancer does not reimburse the club for the money received, the club "SHALL BE ENTITLED TO OFFSET ANY WAGE OBLIGATION BY ANY AMOUNT NOT RETURNED BY DANCER."  The clause does not limit the offset to the amount necessary to bring a dancer's overall wages to the minimum wage the FLSA requires, which, the "tip credit" provision of § 203(m) of the FLSA allows.  *See  Pedigo v. Austin Rumba, Inc.*, 722 F. Supp. 2d 714, 721 (W.D. Tex. 2010) (employer may reach FLSA minimum wage by incorporating tips under 29 U.S.C. § 203(m)(1)-(2)).

This New Agreement language is unconscionable because it waives the substantive FLSA right to be paid a minimum wage.  For example, if the arbitrator found that the club underpaid  a dancer under the FLSA in the amount of $10,000, including $3,000 in tips the dancer had received, requiring the dancer to repay the tips or offsetting the recovery would reduce the dancer's recovery to $7,000, less than the wages the FLSA requires.

The defendants again argue severability.  As discussed, the New Agreement contains a severability clause.  (Docket Entry No. 112, Ex. B, ¶ 14(I) (capitalization removed)).  Because the severability clause shows the parties' intent to keep the New Agreement intact when, as here, a clause contains one part that is not integral and is unenforceable, that part is severable and the clause is otherwise enforceable.  The tip-return provision, like the fee-shifting provision, is severed, but the  the arbitration clause is otherwise enforceable.

The one plaintiff who signed the New Agreement must arbitrate her claims.[5]  The 33 plaintiffs who signed the Agreements are not required to arbitrate.

**IV.   Conclusion**

The defendants' motion to compel arbitration is denied as to the 33  plaintiffs who signed the Agreements and granted as to the single plaintiff who signed the New Agreement.

SIGNED on September 30, 2015, at Houston, Texas.

Lee H. Rosenthal
United States District Judge

---

[5]   Other courts have refused to sever similar unconscionable provisions because of pervasive unfairness.  In *Nino*, for example, the Third Circuit concluded that an unconscionable fee-shifting provision was not severable because the agreement demonstrated that the "employer sought to impose arbitration on the employee as an inferior, one-sided forum that worked to the employer's advantage."  609 F.3d at 206–207; *see also Zaborowski*, 936 F. Supp. 2d at 1157 (the agreement was "so permeated with unconscionability that it [was] not severable").  This case, by contrast, involves relatively few unconscionable provisions and they do not permeate the agreement.