## CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE

This Confidential Settlement Agreement and Release ("**Agreement**") is made by and among Paulita Coronado, Jurate Kopecky, Enid Lopez, and Twana Deshayes ("**Representative Plaintiffs**") and all individuals set forth on Exhibit "A," which is attached hereto and incorporated as if fully set forth herein (the "**Opt-In Plaintiffs**"), (**collectively "Plaintiffs"**) on the one hand, and Defendants D N.W. Houston, Inc., d/b/a Gold Cup, W.L. York, Inc., d/b/a Cover Girls, D. Houston, Inc., d/b/a Treasures, A.H.D. Houston, Inc., d/b/a Centerfolds, D WG FM, Inc., d/b/a Splendor, (collectively the "**Clubs**") Ali Davari, individually, and Hassan Davari, individually (collectively, "**Defendants**"), on the other hand.  Representative Plaintiffs, the Opt-In Plaintiffs, and Defendants shall be referred to jointly as the "**Parties**" and singularly as a "**Party**."

### PREAMBLE

**WHEREAS,** the Plaintiffs are individuals as set forth in Exhibit "A" attached hereto and incorporated by reference as if fully set forth herein;

**WHEREAS,** the Representative Plaintiffs have brought a civil collective action against the Defendants captioned, *Paulita Coronado, et. al., v. D N.W. Houston, Inc., et. al.,* Civil Action Case No. 4:13-cv-02179 (S.D. Tex. July 25, 2013) consolidated with *Paulita Coronado, et. al., v. W.L. York, Inc., et. al.,* Civil Action Case No. 4:13-cv-02174 (S.D. Tex. July 25, 2013) ("**Coronado Lawsuit**"), alleging violations of the Fair Labor Standards Act, 29 USC §§ 201 et seq. (the "**FLSA**");

**WHEREAS,** the Plaintiffs, filed claims asserted in the Lawsuit pursuant to 29 U.S.C. § 216(b) on behalf of themselves and other persons who either currently or formerly work/worked at Defendants' establishments;

**WHEREAS,** on July 11, 2014 the Court granted Conditional Certification in the Coronado Lawsuit with the class being defined as all dancers classified as independent contractors by Defendants who worked at Gold Cup and/or Cover Girls any time from July 18, 2011 to the present ("Class Members");

**WHEREAS,** on November 10, 2014 the Court granted Conditional Certification in the Coronado Lawsuit with the class being defined as all dancers classified as independent contractors by Defendants who worked at Treasures and/or Centerfolds any time from November 10, 2011 to the present ("Class Members");

**WHEREAS,** the Class Members received a notice of rights, consent form, and procedure for opting into this Lawsuit;

**WHEREAS,** the Opt-In Plaintiffs identified on Exhibit A opted in to the Coronado Lawsuit and have not withdrawn to date;

**WHEREAS,** certain Opt-In Plaintiffs were dismissed from the Coronado Lawsuit without prejudice and refiled against Defendants on May 8, 2015 in the case captioned *Twana Deshayes,*

*et. al., v. A.H.D. Houston, Inc., et. al.,* Civil Action No. 4:15-cv-01243 (S.D. Tex. Aug. 11, 2015) ("**Deshayes Lawsuit**");

      **WHEREAS,** Opt-In Plaintiffs Angela Birkman, Janice Galan, and Stefani Kuhn joined the Deshayes Lawsuit;

      **WHEREAS,** the Coronado Lawsuit and the Deshayes Lawsuit are referred herein collectively as the "**Lawsuits,**" or singularly as the "Lawsuit;"

      **WHEREAS,** in the Coronado Lawsuit, the court allowed Intervenors to seek declaratory relief that the Intervenors were independent contractors and such Intervenors are not part of this Agreement;

      **WHEREAS,** Defendants moved to Dismiss Claims of Plaintiffs pursuant to 9 U.S.C. § 4 and Defendants' motion was denied as to certain Plaintiffs in both the Coronado Lawsuit and Deshayes Lawsuit;

      **WHEREAS,** Defendants appealed the decision denying their motion to dismiss claims in both the Coronado Lawsuit and the Deshayes Lawsuit in the appeal styled No. 15-20628 *Paulita Coronado, et. al., v. D N.W. Houston, Inc., et. al.,* Appellants; Cons. w/No. 15-20660, *Twana DeShayes, et. al., v. A.H.D. Houston, Inc., et. al.,* Appellants) ("**Appeal**");

      **WHEREAS,** the Deshayes Lawsuit was stayed in its entirety pending the Appeal;

      **WHEREAS,** the Coronado Lawsuit was stayed only as to those Plaintiffs who are subject to the Appeal;

      **WHEREAS,** the following plaintiffs who filed consent forms later decided to withdraw from the case and are no longer parties to any pending lawsuit or arbitration and are specifically excluded from this Settlement: ████████████████████████████████

      **WHEREAS,** Defendants deny that they have committed any wrongdoing or violated any state or federal law pertaining to its classification of workers, the payment of wages or hours of work and has defended the claims asserted in the Lawsuit;

      **WHEREAS,** the Parties, in view of the costs, risks, and delays of continued litigation and appeals balanced against the benefits of settlement believe that the settlement as provided in this Agreement is in each of their own best interests and the Representative Plaintiffs, each specifically and separately agrees that the settlement as provided in this Agreement is in the best interests of the Plaintiffs and is a fair, reasonable, and adequate resolution of the Lawsuit;

      **WHEREAS,** pursuant to this Agreement, the Parties desire and intend to settle the claims made in the Lawsuit on a collective action basis;

      **WHEREAS,** the Parties desire and intend to seek Court approval of the settlement of the

Lawsuit as set forth in this Agreement (the "**Approval Order**") and to seek an entry of Final Dismissal from the Court, dismissing with prejudice all claims of the Representative Plaintiffs and all Opt-In Plaintiffs as set forth herein;

**WHEREAS,** the Parties desire to compromise, resolve, and settle all claims, allegations and causes of action asserted, finally and forever, in order to avoid the uncertainty, time, and expense which would accompany the Lawsuit;

**WHEREAS,** the Parties have filed in the court of appeals a Joint Motion to Dismiss Appeals Without Prejudice to ensure that the Courts in the Coronado Lawsuit and Deshayes Lawsuit possess full jurisdiction over all pending claims;

**WHEREAS,** the Parties consolidated the Deshayes Lawsuit with the Coronado Lawsuit to seek approval of the Joint Motion for Settlement Approval by the court in the Coronado Lawsuit;

**NOW, THEREFORE**, in consideration of the covenants and mutual promises and agreements herein contained, and other valuable consideration, the sufficiency of which is hereby acknowledged, the Parties agree as follows:

## 1.0.  Case Background/Jurisdiction

**1.1.**    The Representative Plaintiffs filed the Coronado Lawsuit against Defendants on behalf of themselves and all others similarly-situated as a collective action under Section 216(b) of the FLSA on July 25, 2013 and the Deshayes Lawsuit on May 8, 2015.   The Representative Plaintiffs asserted claims against the Defendants alleging that Defendants violated the FLSA by not paying overtime wages and minimum wages as required by law.   All claims pending in the Coronado Lawsuit and Deshayes Lawsuit are to be resolved by this Agreement.

**1.2.**    Putative class members who fall within the class definition have received notice of Coronado Lawsuit, and had until January 16, 2015, to opt-in by returning a Consent Form to Plaintiff's Counsel.   While some class members opted-in after the deadline, the Court has ruled on those consents finding some were timely filed and excluding others who later became part of the Deshayes Lawsuit.   All individuals who filed consent forms in the Deshayes Lawsuit and Coronado Lawsuit and have not filed a notice of withdrawal are listed on Exhibit "A" attached hereto, and are referred to as Opt-In Plaintiffs in this Agreement.

**1.3.**    The Court has jurisdiction over the Parties and the subject matter of the Lawsuit. If the Agreement is approved by the Court, the Court will retain jurisdiction of the action solely with respect to the claims resolved by this Agreement and solely for the purpose of interpreting, implementing, and enforcing this Agreement until the date of the last payment on April 15, 2017 as consistent with the terms herein.

**1.4.**    The Parties agree to file a joint status report with the court after April 15, 2017 informing the court on the status of the payments made by Defendant pursuant to the terms of this Agreement and, if Defendant has timely complied with the terms herein and in particular sections 3.0 and 4.0, requesting the court to enter a final dismissal with prejudice.

**2.0.    Approval of Settlement.**

    **2.1.**    The Parties filed a Joint Motion to Consolidate the Deshayes Lawsuit with the Coronado Lawsuit for the sole purpose of having the Court in the Coronado Lawsuit approve the Joint Motion for Settlement Approval as described herein and such Motion was granted;

    **2.2.**    The Parties and their counsel will, contemporaneously with their execution of this Agreement, execute a Joint Motion for Settlement Approval (the "**Joint Motion**"), to be filed with the Court, seeking final approval of their proposed settlement. This Settlement Agreement will be filed under seal due to its confidentiality provision. However, this Agreement is not contingent upon the Court granting the Parties Joint Motion to File the Settlement Agreement Under Seal.

    **2.3.**    All terms of this Agreement are contingent upon the approval of the Court unless stated otherwise. The Parties anticipate the Intervenors and Defendants will request declaratory relief from the court. This Agreement is not contingent upon the Court granting declaratory relief to the Intervenors or Defendants. That is, even if the court refuses to award Intervenors and Defendants' the relief they seek, this agreement remains binding on the Parties.

**3.0.    Total Settlement Fund.**

    **3.1.**    Defendants shall pay a **"Total Settlement Fund"** of ONE MILLION AND ONE HUNDRED THOUSAND AND NO/100 DOLLARS **($1,100,000.00)**.

    **3.2.**    The Total Settlement Fund shall be divided as follows:

        3.2.1.  Forty percent (40%) of the Total Settlement Fund, which is **$440,000.00**, shall be paid as attorneys' fees to Kennedy Hodges, LLP.

        3.2.2.  **$33,298.48** of the Total Settlement Fund shall be paid to Kennedy Hodges, LLP as reimbursed case expenses.

        3.2.3.  **$12,000** of the Total Settlement Fund shall be paid to CPT Group for administration of the settlement.

        3.2.4.  **$35,000** ("Incentive Award") of the Total Settlement Fund shall be paid as an incentive award, issued on a Form 1099 for cooperating with the prosecution of this lawsuit including the participation in mediation, depositions, and with written discovery. The Incentive Award shall be divided as follows: ███████████████████████

        3.2.5.  The Incentive Award for Paulita Coronado shall also be paid in consideration for releasing her claim for retaliation which she alleged and Defendants dispute, has detrimentally affected her ability to earn a living in the gentleman club industry;

3.2.6.   The remaining amount of the Total Settlement Fund after attorneys' fees, expenses, class action administration costs, and the incentive awards, which is a total of **$579,701.52** shall be paid to the Representative Plaintiffs and all Opt-In Plaintiffs as set forth next to each of their names on Exhibit "A."

3.2.7.   The payments issued to the Plaintiffs shall not have any taxes withheld and the class action administrator shall issue 1099s with respect to each such Plaintiff.

3.2.8.   Plaintiffs shall be solely responsible for all federal, state and local taxes that may be owed by any Plaintiff by virtue of the receipt of any portion of the monetary payment provided under this Agreement.   Should said payment later be deemed by determination of a third party and independent of any act by Defendants or anyone acting on their behalf to be subject to payroll withholdings, Plaintiffs and their counsel agree to hold harmless and indemnify Defendants from any and all third-party claims, losses, damages, liability, suits, actions, judgments, costs, taxes, interest, penalties, expenses, and attorneys' fees, resulting from any liability or claim of liability for amounts assessed or determined to be due to any federal, state, or local government thereof, as a penalty or payment for any federal, state, or local taxes or other withholdings not withheld by the Defendants from the monetary payments made to Plaintiffs pursuant to Section 4 of this Agreement.

3.2.9.   Defendants will pay the Total Settlement Fund in payments as described in section 4.0 herein.

## 4.0.   <u>Payments</u>.

4.1.   The Parties will use a third party claims administration company called CPT Group for the administration of the settlement payments.

4.2.   Defendants shall pay $400,000 of the Total Settlement Fund by September 15, 2016 to CPT Group ("First Payment").   September 15, 2016 is the Due Date for the First Payment ("Due Date").

4.3.   All payments made by Defendant shall be made by wire transfer to a Qualified Settlement Fund account created by CPT Group. CPT Group will provide wire instructions for same.

4.4.   Defendants shall pay $700,000, which is the remaining balance of the Total Settlement Fund, to CPT Group in $100,000 monthly installments ("Second Payment" through "Eighth Payment").   The Second through Eighth Payments shall be paid by the fifteenth of the month starting on October 15, 2016 and every month until the Eighth Payment due on April 15, 2017 ("Due Date").   *See* Exhibit "A."

**4.5.**   A payment will be considered timely if it is mailed or wire transferred to CPT in accordance with this Agreement within five (5) days of the Due Date. If a payment is untimely Plaintiffs' Counsel shall provide written notice to Defendants' counsel, Casey Wallace, Johnson Trent, West, & Taylor, LLP, 919 Milam Street, Ste. 1700 Houston, Texas 77002 by certified mail, return receipt requested regarding the untimeliness of the payment. The Defendants shall have ten (10) days from receipt of the notice to deliver payment. If after ten days, CPT does not receive the outstanding payment, then the remaining balance of the Total Settlement Fund shall be accelerated and due immediately with a ten percent (10%) annual interest rate compounded annually from the date the payment first becomes untimely.

**4.6.**   CPT shall disburse the funds to the opt in Plaintiffs according to the following schedule:

**4.6.1.**   CPT Group will disburse the First Payment seven (7) days after court approval of the Joint Motion for Settlement Approval or seven (7) days after the First Payment is made, whichever comes later;

**4.6.2.**   CPT Group will disburse the next three payments (October 15, 2016, November 15, 2016, and December 15, 2016) on or before December 22, 2016;

**4.6.3.**   CPT Group shall disburse the final four (4) payments (January, 15, 2017, February 15, 2017, March 15, 2017 and April 15, 2017) on or before April 22, 2017.

**4.6.4.**   **Undelivered or Uncashed Checks**. If a check is returned as undeliverable, a search of a national change of address database will be made for another address, and if another address is found, a second check will be mailed. In the event that, after four months of the mailing of each settlement check, any money remains from the settlement as a result of void or returned checks or otherwise unclaimed settlement funds, those funds shall be turned over to the State of Texas' Unclaimed Property Fund together with the last known address of the class members in question. Plaintiffs shall have the right to collect any such settlement amounts under the State of Texas' unclaimed property laws and procedures.

## 5.0.   Releases.

**5.1.**   In consideration of the payments, benefits, agreements, and other consideration to be provided by the Defendants as described in the Agreement, the Representative Plaintiffs hereby RELEASE and FOREVER DISCHARGE the Defendants from all actions, causes and causes of action, suits, debts, obligations, damages, complaints, liabilities, losses, covenants, contracts, controversies, agreements, promises, and expenses (including attorneys' fees and costs), extents,

executions, claims and demands whether created at law or in equity, including all claims and causes of action that have been or could have been asserted in the Lawsuits (collectively, the "Claims"), specifically including by way of example but not limitation, Claims brought or that could have been brought in the Lawsuit under the FLSA, Title VII of the Civil Rights Acts of 1964 and 1991, as amended; the Civil Rights Act of 1866; the Employee Retirement Income Security Act of 1974, as amended; the Occupational Safety and Health Act; the National Labor Relations Act, as amended; the Americans with Disability Act of 1990; the Worker Adjustment and Retraining Notification Act; and/or any other federal, state or local statutes, regulations, decisional law and ordinances, or civil rights or human rights laws, fair employment standards or regulations, contract, or and common laws or tort laws relating to the employment of the Representative Plaintiffs with the Defendants and/or the separation thereof, which the Parties agree and acknowledge that all such Claims are directly at issue and asserted against the Defendants in relation to the Lawsuit.  Such claims and causes of action include, again by way of example but without limitation, any Claims for or concerning wrongful discharge, breach of contract, personal injury, defamation, mental anguish, injury to health and reputation, working conditions and fraud, which the Representative Plaintiffs ever had or now have that in any way, or by any reason, arises out of their employment and/or independent contractor relationship with the Defendants, the termination thereof, and/or the negotiation and/or execution of this Agreement, including all Claims referred to and/or identified in the Parties' pleadings in the Lawsuits and/or in various correspondence to and between the Parties leading up to this Agreement.

**5.2.**   **Release as to All Opt-in Plaintiffs:**  In exchange for the considerations recited in Section 4 of this Agreement, each Opt-in Plaintiff does hereby and forever release, acquit, and discharge the Defendants, which includes its attorneys and past, present, and future divisions, predecessor, successors, shareholders, officers, directors, employees, agents, trustees, representatives, administrators, , assigns, subrogees, and executors, from any and all claims, causes of actions, demands, debts, obligations, damages or liability, known or unknown, which concern or relate in any way to the payment of wages or bonuses or any other form of compensation under the FLSA or any other federal, state or local wage-and-hour law and any and all claims for retaliation under the FLSA or state wage–and-hour statutes, at law or in equity under the common law, contract law, statutory law, the Fair Labor Standards Act, 29 U.S.C. §§201, et seq., and state wage laws, as well as any and all derivative claims under the Employee Retirement Income Security Act, 29 U.S.C. §§201, et seq.  All such claims, if any and including any and all claims for attorneys' fees, costs, expenses and the like, are hereby compromised, settled, and extinguished in their entirety.

**5.3.**   The Plaintiffs who are not currently working at Defendants' establishments understand and agree that because of circumstances unique to them, including but not limited to, irreconcilable differences with Defendants, the Defendants shall have the right to refuse entry upon their premises and the right to refuse to hire Plaintiffs.

**5.4.**   In consideration of the payments, benefits, agreements, and other consideration described in the Agreement, Defendants hereby RELEASES and FOREVER DISCHARGES the Plaintiffs from all claims, actions, demands, causes and causes of action that were brought or that could have been brought in the Lawsuits, including without limitation claims and causes of action for breach of contract, unjust enrichment, estoppel, and/or money hands received.

**6.0.    Settlement of All Claims.**

    **6.1.**    Upon execution of this Agreement, all Claims and potential Claims by the Representative Plaintiffs and all Claims and potential Claims of the Opt-In Plaintiffs referenced in section 5.2 against Defendants, including, but not limited to, claims for wages, back pay, overtime, expense reimbursements, liquidated damages, costs, interest and attorneys' fees, and without admission that the Representative Plaintiffs or the Opt-In Plaintiffs have established that any such Claims have any merit or that the Representative Plaintiffs or the Opt-In Plaintiffs have incurred any such damages, shall be deemed settled, satisfied, and resolved with respect to the issues resolved by this Agreement.

**7.0.    Dismissal of Action with Prejudice.**

    **7.1.**    Upon approval of the settlement terms and upon Order of the Court, the Parties agree that these Lawsuits and all claims and causes of action brought in these Lawsuits shall be dismissed in its/their entirety, with prejudice to the filing or refilling of same, and without the taxing of any court costs to any Party, except to the extent otherwise expressly provided in the Agreement. Such dismissal shall apply to the Representative Plaintiffs and to all Opt-In Plaintiffs. Except to the extent specifically provided herein, each of the Parties, including the Representative Plaintiffs and each of the Opt-In Plaintiffs, shall be responsible for his, her, or its own attorneys' fees and costs incurred in connection with prosecuting and/or defending the Lawsuits. Following the Defendants' compliance with Section 3.0 and 4.0 herein, the Defendants shall have no further obligation to the Representative Plaintiffs or the Opt-In Plaintiffs or to Plaintiffs' Counsel with respect to the payment of any sums, including payment of attorneys' fees and costs, or any payments to the Representative Plaintiffs or any Opt-In Plaintiff.

    **7.2.**    Pending dismissal of the Lawsuits, the Parties hereby agree to stay all discovery, and agree to take all necessary steps to stay all discovery and deadlines in the Lawsuits until the Court makes a determination regarding settlement approval, and which may reasonably aid in settling and dismissing the Lawsuits as set forth herein.

**8.0.    Confidentiality.**

    **8.1.**    The Plaintiffs agree to not disclose the terms of this Agreement, including the amount paid to them. Provided, however, the Plaintiffs may disclose the fact of settlement and the terms of this Agreement to their spouse, a tax advisor, financial advisor, other plaintiffs in this matter, and/or the attorneys with whom they consult regarding this Agreement after first securing from them an agreement to maintain the fact and terms of settlement strictly confidential, or if legally compelled to do so by a court of competent jurisdiction. If asked a direct question regarding the Lawsuit, the Plaintiffs may respond with something to the effect of, "the Lawsuit has been settled."

    **8.2.**    The parties acknowledge that a breach of the confidentiality and non-disparagement provisions (sections 8.1 and 9.8 of this Agreement) will constitute a material breach of this Agreement. It is agreed that the breaching party shall be liable to the other for the sum of

$1,000.00 in liquidated damages or the return of any amount received under this Agreement, whichever is larger, along with any other remedies available under the law or in equity.

**8.3.** **Return of Confidential Materials.** The parties expressly incorporate the terms of the Protective Order entered by the Honorable Lee Rosenthal at Docket No. 73 into this Confidential Settlement and Release, including the terms of Paragraph 18, governing the treatment of confidential information. Counsel for any party subsequently joining this lawsuit after entry of the Protective Order will inform them of their obligations pursuant to the terms of the Protective Order and all parties to this action expressly agree to the terms of the Protective Order, including Paragraph 18 governing the treatment of confidential information.

## 9.0. <u>Resolution of Intervenors' Claims.</u>

**9.1.** By their First Amended Complaint in Intervention, Intervenors have sought declaratory relief in connection with their claimed legal status as independent contractors, and not employees as defined under the FLSA. The parties agree that Intervenors' request for declaratory relief shall survive approval of the Settlement between the Parties. Further, in the event that the Court approves Settlement, the Parties then agree to not oppose any request for such declaratory relief, whether in the form of motion or by trial. In the event the Court does not approve the Settlement, Plaintiffs shall have the same rights to oppose the Intervenor's relief as if this Agreement had not been reached.

## 10.0. <u>Miscellaneous.</u>

**10.1.** <u>Complete Agreement.</u> Other than as stated herein, the Parties warrant that no representation, promise, or inducement has been offered or made to induce any Party to enter into this Agreement and that they are competent to execute this Agreement and accept full responsibility therefore. This Agreement contains and constitutes the entire understanding and agreement between the Parties and supersedes all previous oral and written negotiations, oral and written representations, agreements, commitments, and writings in connection therewith. This Agreement may not be amended or modified except by a writing signed by authorized representatives of all Parties. Except as set forth expressly herein, each of the Parties specifically disclaims any reliance on any representations, disclosures, or non-disclosures of any of the other Parties hereto in connection with his, her, or its decision to enter into this Agreement.

**10.2.** <u>Knowing and Voluntary Agreement.</u> The Representative Plaintiffs and Opt-In Plaintiffs agree that they are entering into this Agreement knowingly, voluntarily, and with full knowledge of its significance. The Representative Plaintiffs and Opt-In Plaintiffs further affirm that they have not been coerced, threatened, or intimidated into signing this Agreement and that they are solely relying on their own judgment and the advice of Plaintiffs' Counsel in deciding to enter this Agreement.

**10.3.** <u>Severability.</u> If any part of this Agreement is found to be illegal, invalid, inoperative, or unenforceable in law or equity, such finding shall not affect the validity of any other provisions of this Agreement, which shall be construed, reformed, and enforced to affect the purposes thereof to the fullest extent permitted by law. If one of more of the provisions contained

in the Agreement shall for any reason be held to be excessively broad in scope, subject matter, or otherwise, so as to be unenforceable as written, the Parties agree that such provision(s) shall be construed to be limited or reduced so as to be enforceable to the maximum extent allowed under applicable law.

**10.4.   Joint Preparation.**  This Agreement and all attached exhibits shall be deemed to have been drafted jointly by the Parties and, in construing and interpreting this Agreement, no provision of this Agreement shall be construed or interpreted against any Party because such provision, or this Agreement as a whole, was purportedly prepared or requested by such Party.

**10.5.   Counterparts.**  This Agreement may be signed in counterparts and the separate signature pages executed by the Parties and their counsel may be combined to create a document binding on all of the Parties and together shall constitute one and the same instrument.

**10.6.   Interpretation of the Agreement.**  The Agreement shall be interpreted and enforced under the laws of the State of Texas without regard to its conflict of law provisions.  Any claim arising out of or relating to the Agreement, or the subject matter hereof, shall be resolved solely and exclusively in the United States District Court for the Southern District of Texas – Houston Division, and the Parties hereby consent to the personal jurisdiction of the Court in connection therewith.

**10.7.   Non-Retaliation.**  Defendants warrant and agree that they shall take no actions to retaliate against the Representative Plaintiffs or any of the Opt-In Plaintiffs. The parties expressly agree that the exercise Defendants' right described in Section 5.3 of this agreement is not retaliation. The Defendants agree to provide a neutral reference for Plaintiffs when asked by a prospective employer.  Specifically, the neutral employment reference will only provide the job position.

**10.8.   Non-disparagement.**  The parties agree that they will not in any way directly or indirectly engage in any conduct or communication that will disparage, denigrate, or discredit any party to this settlement agreement, including but not limited to, making or causing to be made any statements, posts or communication, to any media outlet (television, radio or print), public interest group, publishing company or on any electronic social media forum, including but not limited to Facebook, Twitter, Instagram, emails, chat rooms, blogs or any other electronic forum. Defendants agree that, if contacted by any person including a prospective employer of any Plaintiff, it shall disclose only the Plaintiff's position(s) held.

**10.9.   IN WITNESS WHEREOF**, the Parties and/or their duly authorized attorneys have caused this Agreement to be executed on the dates set forth below.

**Representative Plaintiffs:**

_____            08-25-2016
Paulita Coronado                           Date

---

_Twana Deshayes_ (signature)

08/24/2016

Twana Deshayes                                    Date

_____        _____
Enid Lopez                                        Date

_____        _____
Jurate Kopecky                                    Date

**Defendants:**

**D N.W. Houston, Inc., d/b/a Gold Cup:**

By: _____        _____
                                                  Date

Title: _____

**W.L. York, Inc., d/b/a Cover Girls:**

By: _____        _____
                                                  Date

Title: _____

**D. Houston, Inc., d/b/a Treasures:**

By: _____        _____
                                                  Date

Title: _____

_____        _____
Twana Deshayes                                                  Date


_____          08/25/2016
Enid Lopez                                                      Date
        _____


_____        _____
Jurate Kopecky                                                  Date


**Defendants:**

**D N.W. Houston  Inc.  d/b/a Gold Cup:**


By     _____        _____
                              Date

Title   _____


**W.L. York  Inc.  d/b/a Cover Girls:**


By     _____        _____
                              Date

Title   _____

**D. Houston  Inc.  d/b/a Treasures:**


By     _____        _____
                              Date

Title   _____

_____          _____
Twana Deshayes                            Date


_____          _____
Enid Lopez                                Date


_____          _____
Jurate Kopecky                            Date   8/ 25 / 2016


**Defendants:**

**D N.W. Houston, Inc., d/b/a Gold Cup:**


By:    _____          _____
                                                 Date

Title: _____


**W.L. York, Inc., d/b/a Cover Girls:**


By:    _____          _____
                                                 Date

Title: _____

**D. Houston, Inc., d/b/a Treasures:**


By:    _____          _____
                                                 Date

Title: _____

10.9.   **IN WITNESS WHEREOF**, the Parties and/or their duly authorized attorneys have caused this Agreement to be executed on the dates set forth below.

**Representative Plaintiffs:**

_____        _____
Paulita Coronado                                         Date


_____        _____
Twana Deshayes                                           Date


_____        _____
Enid Lopez                                                    Date


_____        _____
Jurate Kopecky                                            Date


**Defendants:**

**D N.W. Houston, Inc., d/b/a Gold Cup:**

By: _____        ___August 25, 2016___
                                                                      Date

Title: ___President___


**W.L. York, Inc., d/b/a Cover Girls:**

By: _____        ___August 25, 2016___
                                                                      Date

Title: ___President___

**D. Houston, Inc., d/b/a Treasures:**

By: _____

_____August 25, 2016_____
Date

Title: _____President_____

**A.H.D. Houston, Inc., d/b/a Centerfolds:**

By: _____

_____August 25, 2016_____
Date

Title: _____President_____

**D WG FM, Inc., d/b/a Splendor**

By: _____

_____August 25, 2016_____
Date

Title: _____President_____

**Ali Davari:**

By: _____

_____August 25, 2016_____

**Hassan Davari:**

By: _____

_____8/25/2016_____
Date

# EXHIBIT A

| Total Settlement - 1,100,000 | | |
|---|---|---|
| Last Name | First Name | Amount to Plaintiff |



| | |
|---|---|
| Total Net to Class | 579,701.52 |
| Incentive Award | |
| Incentive Award | |
| Incentive Award | |
| Incentive Award | |
| Attorney Costs | 33,298.48 |
| Class Action Admin. Fee | 12,000.00 |
| Attorneys' Fee | 440,000.00 |
| **TOTAL** | **1,100,000.00** |

**First Installment- 400,000**

| Last Name | First Name | Amount to Plaintiff |
|---|---|---|
| | | |

| | | |
|---|---|---|
| Total Net to Class | | 159,701.52 |
| Incentive Award | | |
| Incentive Award | | |
| Incentive Award | | |
| Incentive Award | | |
| Attorney Costs | | 33,298.48 |
| Class Action Admin. Fee | | 12,000.00 |
| Attorneys' Fee | | 160,000.00 |
| **TOTAL** | | **400,000.00** |

**Installments 2 throught 8,   100,000 each**

| Last Name | First Name | Amount to Plaintiff |
|---|---|---|
| | | |



174

| | | |
|---|---|---|
| Total Net to Class | | 60,000.00 |
| Attorneys' Fees | | 40,000.00 |
| **TOTAL** | | **100,000.00** |